## BRADLEY ET AL. v. HINTRAGER.

1. **Tax Sale and Deed:** LAPSE OF TIME: TAX ABANDONED. Where a tax was levied by the city of Dubuque on the lot in question in 1857, and the lot was sold therefor in 1871, and a deed made pursuant to such sale in 1879, but it appeared that the tax of 1857 had not been carried forward on the tax books of the city for any of the subsequent years, and that the taxes levied for such subsequent years had all been paid, and that the city had adopted, as a guide for the treasurer, a " history of delinquent taxes," in which the lot in controversy appeared, with no tax of any year entered against it, *held* that the city had abandoned the tax for 1857 on said lot, and that the sale of the lot, and the deed pursuant thereto, vested no title in the purchaser.

*Appeal from Dubuque Circuit Court.*

THURSDAY, JUNE 14.

THIS is a controversy involving the title to a mineral lot in the city of Dubuque. The plaintiffs claim the lot under the original patent title. The defendant's claim is based upon a tax sale and deed. The district court entered a decree for the plaintiffs, from which defendant appeals.

*Robinson & Powers,* for appellant.

*Graham & Cady,* for appellees.

ROTHROCK, J.—I. The city of Dubuque is organized under a special charter. In 1857, the lot in controversy was assessed for city purposes by the city officers as belonging to an un-

known owner. John C. Higginson, then a resident of the city, was the owner, as appeared by the records. Higginson removed from the state sometime from 1861 to 1863, and never afterwards returned as a resident. He died in the year 1879, or before that time. The plaintiffs claim to be the owners of the lot by a conveyance from his heirs, made in the year 1880. There is no direct evidence that the tax of 1857 was ever paid. The lot was not assessed for 1858.. It was assessed and taxed for the year 1859, and for every year after that, up to and including the year 1879. In some of these years it was assessed and taxed to Higginson, and in others as belonging to an unknown owner. It does not appear that any of the taxes for the years named became delinquent. In 1871, the lot was sold by the treasurer of the city to the defendant, for the taxes of 1857, a treasurer's deed was made to the defendant in 1879. The defendant commenced an action to quiet his title to the lot, basing his claim upon the treasurer's deed. That suit was commenced against Higginson, who had died before the action was commenced. It is scarcely necessary to say that this action in no manner affected the rights of the heirs of Higginson.. They were not parties thereto, and, as the plaintiffs claim title by conveyance from said heirs, their rights are the same as if no such action had been commenced.

II.    It is claimed that the right to collect the tax of 1857 was barred by the statute of limitations long before the defendant purchased the lot at tax sale. We do not deem it necessary to determine this question. It is true, the sale was made some fourteen years after the tax was assessed, and for a greater part of that time the city had no authority under the law to collect taxes upon land assessed to unknown owners, except by a proceeding *in rem* against the property, in the district court. No such action was taken. We will proceed to determine whether the defendant's tax title should be held valid for other reasons. It appears that the tax for 1857 was not carried forward on the annual tax books for any of the years after the year 1857. As the lot was assessed for every

subsequent year excepting 1858, up to 1871, the year in which it was sold, and as none of the taxes became delinquent, it is a fair presumption that, if the tax of 1857 had been carried forward in the books for the subsequent years, it would not have remained delinquent. However that may be, we think the city, long before the sale, abandoned the collection of this tax. Why this tax was abandoned does not appear. It may have been that it was because the lot was out-lying property, and it was very questionable whether it was subject to city taxation at that early day. We will proceed to point out wherein we think the city abandoned the tax of 1857. It appears that one Guthrie prepared a history of delinquent taxes, in the form of a book. In March, 1871, the city purchased this book from Guthrie for the sum of $400, and the city council passed a written resolution, which was transcribed upon the first inside cover of the Guthrie book, as follows:

DUBUQUE, March 4, 1871.

"H. GRISWOLD, *Treasurer*, SIR:—At the last session of the council, the following was adopted:

*Resolved*, That the book purchased by the city of P. M. Guthrie, being a history of delinquent taxes, be taken as the standard from which we collect taxes at the time it was made. This resolution covers everything from 1857 to 1864, inclusive. C. G. HARGUS, *Recorder.*"

The lot in controversy appeared upon this book, *but no tax of any year was entered against it.* It would seem that this should have been an end of any claim for delinquencies upon this lot. But counsel for appellant claim that the lot in question was carried on to a delinquent tax book as delinquent for the tax of 1857. This delinquent tax book, it appears, is a book kept separate from the tax book for the separate years. Whether or not this book was kept in pursuance of any law or ordinance, does not appear. And we think it is immaterial by what authority it was kept. There must have been some good reason why the city council adopted Guthrie's book as the standard history.

Now, in view of the great lapse of time between the levy of this tax and the sale of the lot therefor, and the fact that the city council adopted the Guthrie book as the standard from which to collect delinquent taxes, we think this tax title should not be sustained, because, by the "standard" which the city itself adopted, there were no delinquent taxes for which a sale could be made.

AFFIRMED.