## IOWA LAND CO., Limited, v. DOUGLAS COUNTY *et al.*

1. Comp. Laws, Sec. 1609, provides that no demand of taxes shall be necessary, and the collection of taxes, on non-payment by January 1st, shall be made by distress and sale. Sec. 1612 provides that taxes on realty are a perpetual lien thereon, and that taxes on personalty shall be a lien on any realty owned by the person from whom they are due. Sec. 1620 requires the treasurer to give notice of the sale for taxes, which shall contain a list of the lands to be sold, and the "amount of taxes." Sec. 1621 confers on the treasurer power to sell land which shall be liable for taxes of "any description." *Held,* that a sale of land for taxes on personalty was authorized. FULLER, J., dissenting.

2. Comp. Laws, Sec. 1616, requiring the treasurer to file a return of his inability to make the personal taxes out of the personal property, and providing that on such return he shall be released from liability for further failure to collect such taxes, and Sec. 1617, rendering him liable for the tax on failure to make the return, as in force prior to 1891, do not require such return as a condition to the right of the treasurer to sell land for payment of personal taxes.

3. Where a mortgage of land was taken prior to 1891, after personal taxes against the mortgagor became liens on the land—power at that time being conferred on the treasurer, without limitation as to time, to sell land for personal taxes—the failure of the treasurer to collect the taxes by distress of personalty, or by sale of the realty on which the lien existed, did not release the taxes, or preclude the treasurer from selling the real estate for the same in a subsequent year.

4. The county commissioners have no authority to release land from a lien for personal taxes.

5. An attempted release by the county commissioners of a lien on real estate for personal taxes, made subsequent to the execution of a mortgage of the property, cannot operate to estop the county, as against the mortgagee, from enforcing the lien.

6. The failure of the auditor to bring forward personal taxes for preceding years, and extend the same upon the real estate tax list, or of the treasurer to sell the land on which they were a lien, does not, as against subsequent incumbrancers of the land, release the land from the lien. FULLER, J., dissenting.

7. A proceeding for the enforcement of the payment of taxes which are a lien on land, by the sale thereof by the treasurer, is not an action on a liability created by statute (Comp. Laws, Sec. 4850), and therefore is not barred in six years.

(Opinion filed April 7, 1896.)

Appeal from circuit court, Douglas county. Hon. E. G. SMITH, Judge.

Action to restrain Douglas county and its treasurer from selling real estate for the collection of personal taxes assessed against the former owners of such real estate. Plaintiff had judgment, and defendants appeal. Reversed.

The facts are stated in the opinion.

*W. E. Tipton* and *D. M. Henderson,* State's Attorney, for appellants.

The personal taxes sought to be collected by the appellant treasurer having been regularly levied and properly placed upon the tax lists, when the same became due they became valid liens against the respective tracts of land involved in this action then or thereafter owned by the persons against whom such taxes were assessed respectively. Comp. Laws, § 1612; Laws of 1891, Ch. 14, § 96; Miller v. Anderson, 1 S. D., 539.

These taxes were shown upon the tax lists of the county and the law made them a lien upon the respective tracts of land in question, so that the plaintiff had full notice of such liens when its interest attached and hence could claim no vested rights against the state or county in the enforcement of such liens. Black on Tax Titles, § 482, *et seq.*; Grim v. Weissenberg, 57 Pa. St. 433; S. C., 98 Am. Dec., 237; Hetfield v. Plainfield, 46 N. J. L., 119; Richman v. Board, 42 N. W. 422; Cooley on Taxation, p. 228 and cases cited.

If in any sense the law of 1891 could be held as retroactive the legislature would have the right to pass such a law, as it was for the purpose of enforcing a right (the personal tax liens on said lands) which already existed, and not for the purpose of creating a new right. Commissioners v. Rosche, 50 Ohio St. 153; S. C., 40 Am. St. Rep., 653; Town of Bellevue v. Peacock, 89 Ky., 495; S. C., 25 Am. St., 552; Donley v. City of Pittsburg, 147 Pa. St., 348; S. C. 30 Am. St., 738; Hasbrouck v. City of Milwaukee, 13 Wis. 37; S. C., 80 Am. Dec. 718. See also Black on Tax Titles, § 151 and cases cited; State v. Duncan, 3 Lea, 679; McInerny v. Reed, 23 Iowa, 410.

When the county treasurer proceeded to foreclose such liens his right to do so was unquestionable, even if a question existed prior to that time. Laws of 1891, Chap. 14, § 98 and amendments thereto; Miller v. Anderson, 1 S. D. 539; Laws of 1890, Chap. 150. See also Desty on Taxation, p. 471. Under the laws of this state taxes are collectible by summary process and not by action, hence the state of limitation could have no bearing whatever upon the collection of taxes in this state. But even if taxes were collectible by suit, they are not debts in the ordinary sense of the term, and a state of limitation would not run against their collection. Black on Tax Titles, § 164; Greenwood v. LaSalle, 26 N. E. 1089; Price v. Lancaster County, 24 N. W. 705. See also High on Injunc. § 523 and cases cited; Frost v. Flick, 1 Dak. 126; Swan v. Knoxville, 11 Humph. 132; Black Tax Titles, § 190; Desty on Taxation, p.

774; Owen v. Baker, 101 Mo., 407; S. C., 20 Am. St. 618; Washington v. Hosp, 43 Kan. 324; S. C., 19 Am. St., 141 and note.

If respondent has any cause for complaint it has failed to bring itself within the rules of equity, and has a complete remedy at law and, therefore, cannot maintain this equity proceeding. High. Inj. § 491; Farrington v. New Eng. Inv. Co., 45 N. W., 191; Hixon v. Oneida Co., 52 N. W. 445; Mesker v. Koch, 76 Ind., 68; Pillsbury v. Humphrey, 26 Mich. 245; Black on Tax Titles, § 216. To entitle it to the relief demanded respondent's interest should appear in some manner as owner, either legal or equitable. Rushton v. Burke, 6 Dak., 478. It does not appear that respondent would be injured by appellant treasurer's act complained of, or, if injury resulted, that such injury would be irreparable. Hence injunction will not lie. Ritter v. Patch, 12 Cal., 298; Wells v. Dayton, 11 Nev. 161; Frost v. Flick, 1 Dak., 132; High, Injunc., § 491.

*E. P. Wanzer*, for respondent.

Injunction will lie. Even had the question been raised by demurrer or answer, there could be no question as to the right of plaintiff, under the facts disclosed by the record, to seek its remedy in a court of equity. Davis v. Bennett, 77 Tex., 3; S. C., 13 S. W. 613; Court v. O'Connor, 65 Tex. 334; Barber v. Farr, 54 Iowa, 57, 6 N. W. 134; Smith v. Osborn, 53 Iowa, 474; 5 N. W. 681; Burnett v. Corporation, 3 Ohio, 83; Osborn v. U. S. Bank, 9 Wheat., 738; Crane v. City, 22 Wis. 305; Ill. C. R. R. Co. v. McLean, 17 Ill., 291; Fremont v. Bohring, 11 Cal. 380; Kinyon v. Duchane, 21 Mich., 493; Rodgers v. Caldwell (Ill.), 32 N. E. 691. The objection that equity has no jurisdiction, because there is an adequate remedy at law, comes too late after answer filed. See Magee v. Magee, 51 Ill. 500; Stuart v. Cook, 41 Ill. 447; Chicago T. Seminary v. Gage, 103 Ill. 182. See also Bank v. City of Utica, 27 Am. Dec., 72; Curtis v. Fox, 27 N. Y. 302; Clarke v. Sawyer, 2 Id., 500; Pumpelly v. Village of Oswego, 45 How. 241; Jones v. Collins, 16 Wis. 602; Newton v. Newton, 48 N. W. 450; R. R. v. Robinson,

43 N. W. 75. The statute does not confer the power to sell real estate for personal taxes. The treasurer did not have the right to an action in court for the enforcement of the liens provided by statute. Louisville Trust Co. v. Muhlenburg County, 23 S.W.; Montezuma V. W. S. Co. v. Bell, 36 Pac. 1102; Board v. Bank (Kan.), 30 Pac. 22; State v. Adler, 68 Miss., 487; San Luis Obispo County v. White, 91 Cal. 432; Louisville Water Co. v. Com., 89 Ky. 244; Turnpike Comrs. v. R. R., 1 S. W., 671. Chap. 14, Laws 1891, did not have a retroactive effect. American Inv. Co. v. County of Beadle, 5 S. D. 410; 69 N. W., 212 and cases cited. The treasurer is estopped from the collection of all taxes due prior to Nov. 1, 1887, by virtue of the statute of limitations. See State v. Certain lands, etc., 42 N. W. 473; City etc., v. Jones, 20 Fed. 188; State v. Mining Co., 14 Nev., 226; Burlington v. B. & M. R. R., 41 Iowa, 134; Sexton v. Peck, 48 Iowa, 250; City etc. v. Lunning, 15 Pac. 311; Los Angeles Co. v. Ballerino, 32 Pac., 581.

CORSON, P. J. In 1883 the county auditor of the county of Douglas brought forward, and placed upon the delinquent tax list, for the purpose of collecting the same by a sale of the real property of the owner at the time the taxes were assessed, the personal property taxes assessed against the owners of said real property; and the county treasurer of said county proceeded to advertise the same for sale in the usual manner. These personal property taxes had been assessed for various years, extending from 1883 to 1890. The plaintiff had loaned money, and taken mortgages, as security therefor, on a large number of tracts of land so offered for sale, during the years 1887 to 1890, but said mortgages were all executed subsequently to the assessment and levy of the personal property taxes sought to be collected by the proposed sales, and it instituted this action to enjoin the defendants, and especially the said county treasurer, from making the proposed sales, and to have the said personal property taxes declared null and void. A

temporary injunction was granted, and upon the final hearing the temporary injunction was made perpetual, and the said personal property taxes were adjudged null and void. From this judgment the defendants have appealed.

All the facts were stipulated by the parties, and this stipulation was adopted by the court, and constitutes its findings of fact. The only findings that we deem necessary to set out are the following: "(5) That the personal taxes in controversy in this action were levied against the persons as herein indicated, and brought forward and placed upon the tax lists of said county for the year 1893, against the respective tracts of land herein described, in the following manner, to wit, by M. N. Stultz, county auditor of said Douglas county, before said list was placed in the hands of said county treasurer, and that prior to said time the said personal taxes remained upon the personal tax list of said county." "(9) That the board of county commissioners of said county, prior to the passage of said resolution, never made any order for the collection of said personal taxes, or took any other action whatever for the collection of the same. (10) That all of said personal taxes that became delinquent prior to the 1st day of November, 1887, were due and collectible six years or more before the commencement of the proceedings of the defendant W. P. VanderZalm to enforce the collection thereof. (11) That prior to October, 1893, the treasurer of said Douglas county took no steps to sell said lands for said personal taxes. (12) That none of said lards are, or were at any time ever, certified as homesteads under the homestead law of this state." Upon the filing and adoption of the stipulated facts, the defendants made the following motion: "Now come the defendants, on the filing of the stipulated facts in this cause, and demur to the said facts, and move the court for judgment on the ground that said facts are not sufficient to constitute a cause of action against defendants, and to entitle the plaintiff to the relief asked for in its complaint."

Four questions are presented for determination: First. Was the county treasurer authorized, by the law as it existed prior to the amendments of 1891, to sell real property for personal property taxes assessed against the owner of such real property? Second. Did the failure of the county treasurer to make his return as required by Sec. 1616, Comp. Laws, or to collect the personal property tax by distraint and sale, or by a sale of the real property for such personal property tax, have the effect to release such real property from the personal property tax? Third. Was the county estopped, by reason of the acts of the county commissioners and other officers of the county, from selling the real property for the personal property taxes? Fourth. Does the statutes of limitations apply to taxes assessed against real and personal property?

The appellants contend that, under the provisions of the law existing prior to the act of 1891, the county treasurer had power and was authorized to sell the real estate owned by the party against whom taxes on personal property were assessed for such taxes, and that the proceedings of the county treasurer were regular and valid. This proposition is denied by the respondent, and it insists that, while the personal property tax was made a lien upon the real estate, there was no law authorizing a sale of the real property for such personal property taxes prior to the law of 1891; that no sale under the law of 1891 could be made for personal property taxes assessed prior to the passage of such law; that the failure of the county treasurer to collect such taxes by distress and sale, or to make his return of such personal property taxes, had the effect to release such taxes, as against the plaintiff; and that all personal property taxes assessed prior to 1887 were barred by the statute of limitations of this state. A considerable portion of the briefs of counsel were taken up with the discussion of the question as to whether or not the law of 1891 could be given a retroactive effect as to the personal property taxes assessed prior to its passage; but in the view we

take of this case, we have not deemed it necessary to consider that question. The subject of taxation is one exclusively under legislative control, and the rights of parties are to be determined mainly by the statutory regulations made by the lawmaking power of the state. How far, and to what extent, taxes are made a lien upon property, and when, and under what circumstances, such property may be sold to satisfy such liens, is only to be determined by the statutory provisions upon the subject. Cooley, Tax'n, pp. 444-448; Black, Tax Titles, § 182; Desty, Tax'n, § 128. The first section bearing upon this question is Sec. 1609, Comp. Laws, the material part of which reads as follows: "No demand of taxes shall be necessary, but it shall be the duty of every person subject to taxation under this law to attend at the treasurer's office at the county seat and pay his taxes; and if any person neglect so to attend and pay his taxes until after the first day of January next succeeding the levying of the taxes, the treasurer is directed and required to collect the same by distress and sale. * * *" Two important provisions will be noticed: First, no demand for taxes is required to be made; and, second, the collection of taxes is to be made by distress and sale. Sec. 1612 reads as follows: "Taxes upon real property are hereby made a perpetual lien thereupon against all persons and bodies corporate, except the United States and the territory, and taxes due from any person upon personal property shall be a lien upon any real property owned by such person or to which he may acquire a title. All taxes shall as between vendor and purchaser become a lien upon real estate on and after the first day of November in each year." It will be observed that both real and personal property taxes are made a lien upon the real property—one perpetual, and against all persons except the United States and this state, and the other an ordinary lien. Miller v. Anderson, 1 S. D. 539, 47 N. W. 957. But they are both made liens, and the liability of the real property for the lien is the same. No distinction is made in the section. Sec. 1620

provides that the treasurer shall give a notice of the sale, and "such notice shall contain a notification that all lands on which the taxes of the preceding year (naming it) remain unpaid will be sold, and the time and place of the sale; and said notice must contain a list of the lands to be sold and the amount of taxes due." Sec. 1621 confers upon the treasurer the power to sell all real property "which shall be liable for taxes of any description, * * * which shall remain unpaid." It will be noticed that the treasurer is not required or directed to offer at public sale real property for the taxes due thereon, but which shall be liable for taxes of any description for the preceding year or years, which shall remain due and unpaid. As we have seen, by the provisions of Sec. 1612, personal property taxes are made a lien upon the real property, the same as real property taxes, and necessarily such property is made liable therefor. The contention of counsel for the respondent, that, while personal property taxes were made a lien upon the real property, the real property was not liable therefor, is clearly untenable. The very theory of a lien upon real or personal property is that the lien is a legal claim or charge upon such property, for which the property is liable. We are unable to discover any theory upon which the distinction claimed can be based. It is not questioned but that the treasurer had power to sell the real estate for the real-estate taxes, and this by virtue of Secs. 1612, 1620 and 1621. But why was not the real property liable to be sold for the personal property tax? What language is there in either of the sections upon which any distinction can be based? Both are made liens upon the real property by the same section, and in substantially the same language. And by Sec. 1621 the power is conferred upon the treasurer to sell for taxes of any description due and unpaid.

The counsel for the respondent concedes that under the law of 1891 a sale of the real property for the personal property taxes assessed against the owner of such real property may be made. But the only change made in Sec. 1620 which

is made Sec. 104, Chap. 14, Laws 1891, is the insertion of the words "both real and personal" between the words "taxes" and "due;" making the clause of the section read, "and said notice shall contain a list of the lands to be sold and the amount of the taxes both real and personal due." The evident purpose of the insertion of these words was to make more clear and certain the meaning of the expression "amount of taxes due," contained in the section as it stood prior to the amendment. That the insertion of these words was not intended to confer any new power or authority upon the treasurer, but they were simply inserted as explanatory of the meaning of the expression "the amount of taxes due," and for the purpose of removing any doubt as to the meaning of the existing law, is made clear from other sections in the amended law of 1891. This is apparent from the fact that no change was made in Sec. 1621, conferring upon the treasurer the power to sell. That section is copied verbatim into the amended law. Again, the change made in Sec. 1612 in the law of 1891 clearly shows that the legislature understood that that section contemplated a sale of the real property for the personal property taxes. The section as it originally stood, has already been given. That section, as re-enacted, is in the same language as the former section, down to the words "acquire title." At this point in the section is inserted the following condition: "But such lien shall not be enforced against such real estate until after the filing of the county treasurer's return showing that he is unable to make such taxes out of the personal property of the person owing such tax, as provided in this act." And the section concludes with the following proviso: "That nothing in this section shall apply to the taxes of 1890." The lien mentioned in the amended portion of the section clearly refers to the lien of the personal property tax, as that is the only tax as to which the treasurer is required to make a return, Secs. 98-100, Chap. 14, Laws 1891. The effect of this amendment is to introduce into the law a condition upon which a sale of the real property may

be made for the personal property tax, clearly implying that previous to the amendment the sale could be made without regard to the treasurer's return. And the proviso is that nothing in the act "shall be construed to prevent the county treasurer from advertising the amount due on personal property tax against the real estate, which would be liable for the same if uncollected," etc. There is no grant of power in this proviso. It will thus be seen that the legislature of 1891 nowhere confers any new power to sell real estate for the personal property taxes, but imposes some additional conditions upon the exercise of the power, and assumes that the power then existed, and that real property was "liable" for the personal property taxes, when not collected, or collectible by distraint and sale of personal property. The use of the word "liable" in the proviso clearly shows what was intended by the use of that word in Sec. 1621, and leaves no doubt of the power conferred by that section upon the county treasurer to sell both for real and personal property taxes. We conclude, therefore, that the law, as it existed prior to 1891, fully authorized the county treasurer to sell the real property for the personal property tax assessed against the owner of the real property. It necessarily follows, therefore, that the treasurer was properly exercising the powers vested in him, in advertising the real property for sale to satisfy the personal property taxes assessed against the owner prior to the execution of the plaintiff's mortgages, unless the county is estopped by some acts of its officers, or the taxes are barred by the statute of limitations.

The second question requires but little consideration. As we have seen, the law, prior to 1891, did not prescribe, as a condition to such sale, that the treasurer should make and file his return as to his inability to make the personal property taxes out of the personal property. Sec. 1616 provides that the treasurer shall make such return, and that thereupon such treasurer shall be released from further liability for a failure to collect such taxes; and by Sec. 1617 it is provided that, if he

fails to make the return, he shall be held liable for the taxes. But the failure to make the return does not effect the treasurer's power to sell the real property for such taxes, and, when such taxes were returned as uncollectible by distress and sale of personal property, they still remained upon the assessment roll—a lien upon the real property. A new list, in such cases, was required to be made out for the benefit of the treasurer, but the proceeding in no way affected the lien for such taxes. It is a matter of grave doubt if the failure to make such return is affirmatively shown by the record. If not, the presumption that public officers do their duty would prevail. But, in the view we take of the question, the failure to make such return, if none were made, does not affect the treasurer's powers to sell, under the law as it stood prior to the law of 1891. Neither did the failure of the county treasurer to collect said personal property taxes by distress and sale of personal property, or by a sale of the real estate, have the effect to release the tax, or to preclude the treasurer from selling the real estate for the same in a subsequent year. The power to sell having been conferred upon the county treasurer, without limitation as to time, and without conditions other than that the real estate should be liable for the taxes, and that the same were due and unpaid, it is not competent for the court to prescribe any limitations or conditions not prescribed by the statute. The fact that, by the amended law of 1891, certain conditions have been prescribed, cannot affect the proceedings had under the former law, in which no such limitations or conditions were prescribed. The rights of the parties must be determined by the law as it existed when the taxes became liens. The taxes involved in this case were assessed, and the mortgages under which plaintiff claims were executed, prior to the law of 1891, and consequently by the law as it then stood must the rights of the parties be determined. The plaintiffs, having taken their mortgages while these personal property taxes constituted liens upon the property and were matters of record, must be pre-

sumed to have taken them with notice that they were liens upon the property.

The third question presented will not be discussed at length, as counsel for respondent does not insist in this court that the action of the board of county comissioners in 1892, in assuming to pass a resolution releasing the real property involved in this action from the personal property taxes, was a lawful exercise of any power vested in such board. This attempted release, made subsequently to the execution of the mortgages under which the respondent claims, could not have the effect of an estoppel, as the respondent could not have been influenced in its action by such attempted release. And, the failure of the auditor to bring forward these personal property taxes, and the treasurer to sell the real property to satisfy the same, did not preclude the county, through its county treasurer, from enforcing the collection of the same. The mere delay of the public officers of a county from enforcing the collection of taxes, in the absence of any statute giving to such delay the effect of releasing the taxes, will not have the effect to release the same. Real-estate taxes are made a perpetual lien, valid as against all persons except, etc.; and the personal property taxes are made a lien valid as against all persons except prior incumbrancers. Miller v. Anderson, *supra.* Our attention has not been called to any statutory provision giving to mere delay to enforce the collection the effect of releasing taxes for which real property is made liable.

This brings us to the last question presented, namely, were the personal property taxes assessed and levied prior to November, 1887, barred by the statute of limitations? This is an important question, and we have given it careful consideration. Sec. 4833, Comp. Laws, provides: "Civil actions can only be commenced within the periods prescribed in this Code, after the cause of action shall have accrued, except where, in special cases, a different limitation is prescribed by statute. But the objection that the action was not commenced within the time

limited, can only be taken by answer." Sec. 4580 prescribes that the following action shall be commenced within six years: "An action upon liability created by statute, other than a penalty or forfeiture." And Sec. 4857 provides: "The limitations prescribed in this chapter shall apply to actions brought in the name of the territory, or for its benefit, in the same manner as to actions by private parties." The respondent contends that, under the provisions of the statute of limitations, taxes prior to 1887 are barred. A tax is not a "debt," in the ordinary sense in which that term is used, but is a charge or burden imposed upon property for the benefit of the public. It is levied under the authority of the state, in the exercise of its sovereignty, for governmental purposes, or for some object connected therewith. Hence the statute of limitations has no application to taxes levied under the authority of the state, and does not run against them. Even in some of those states where taxes are collected by action, the action is regarded as one for enforcing a public right, and the courts hold that the statute of limitations will not run against it. Black, Tax Titles, § 164; Greenwood v. Town of La Salle, 137 Ill. 225, 26 N. E. 1089. In this state the payment of taxes is enforced by distress and sale of the personal property, or sale of the real property, and no action in the courts is provided for or required. The proceeding is summary and statutory, and in no sense an action invoking the exercise of the judicial power of a court. Hence proceedings for the enforcement of the payment of taxes in this state do not come within the provisions of our statute of limitations. Whether or not some provision limiting the time for enforcing such collection should be made, is a matter for the lawmaking power.

From these conclusions it follows that the motion of the defendants should have been granted, and judgment rendered for the defendants. We have not deemed it necessary to discuss the question as to whether or not the action was maintainable upon the facts stated, and we express no opinion on that

question. The judgment of the circuit court is reversed, and that court is directed to render judgment upon the facts stipulated, dismissing the action and dissolving the injunction.

Fuller, J. (dissenting). It will be observed that personal taxes from and for the years 1883 to 1890, inclusive were assessed against divers persons, who were the respective owners of the different tracts or quarter sections of land described in the complaint at the time of or since the levy, and prior to respondent's interest, and that no steps were ever taken to sell the land in satisfaction of such personal taxes until October, 1893, when the respective amounts thereof were for the first time brought forward from the personal tax list, and extended upon the real estate tax list, against the various tracts described in the complaint. While Sec. 1612 of the Compiled Laws provides that "taxes due from any person upon personal property shall be a lien upon any real property owned by such person, or to which he may acquire a title," there was, in my opinion, no statutory provision, prior to the law of 1891, authorizing the enforcement of such lien by advertisement and sale of real estate. In addition to the identical provision above quoted, Sec. 865 of the Code of Iowa contains the following provision, omitted from our statute: "The treasurer is authorized and directed to collect the delinquent taxes by the sale of any property upon which the taxes are levied, or any other personal or real property belonging to the person against whom the taxes are assessed." Prior to the proceedings of the county treasurer to sell the land described in the complaint, in satisfaction of the personal taxes mentioned therein, he and his predecessors had been relieved of all statutory liability for a failure to collect the same, by reason of a resolution of the board of county commissioners, acting under Sec. 1616 of the Compiled Laws; and, from the record, it clearly appears that the various officers of the county whose duty it was to collect such taxes, or declare them uncollectible, had for years re-

garded the same as unavailable, and their affirmative acts and general conduct would fully justify a conclusion that no attempt would ever be made to subject the property of respondent to the payment thereof.    Upon the theory of abandonment, under the circumstances of the case, and in the absence of any assertion of the statute of limitations, private rights should be regarded of more persuasive force than those of the public; and the county should be estopped, by the laches of its officers, from enforcing its tax lien upon real property by a sale of the same for personal taxes levied so many years ago, and declared to be unavailable.    Bradley v. Hintager (Iowa) 16 N. W. 204.    In the case of City and County of San Francisco v. Jones, 20 Fed. 188, the court said:    "The state has officers specially appointed to attend to these particular duties, and no others, and, if they neglect their duties, the state which appoints them, if any one, should be the party to suffer.    To permit the state, after the lapse of many years, to recover, by suit, taxes allowed to run uncollected, with 5 per cent penalty, and, in the language of Justice SWAYNE, the 'most devouring rate' of 2 per cent per month interest, would be to inflict unendurable oppression."    True it is that the omission to sell real estate for the personal taxes of its former owners is not, in this case, to be attributed to negligence or unnecessary delay on the part of appellants' predecessors, because there was, as I believe, no statute authorizing such proceeding.    The lien upon the land not being enforceable under the statute existing at the time respondent became the mortgagee or grantee thereof, its interests were at the time in no manner affected thereby, unless the law of 1891, under which appellants were acting, was retroactive, and authorized the sale of said real property for the personal taxes of former owners, or insolvent mortgagors who have left the county and are presumptively unable to respond in damages.    While Sec. 96 of Chap. 14 of the Laws of 1891, by express provision, makes taxes due upon personal property a lien upon real estate, such lien is only en-

forceable in the specific manner provided, and not until after the filing of the county treasurer's return showing that he is unable to make such taxes out of the personal property of the tax debtor; and Sec. 132 of said chapter declares that an emergency exists, because "the present revenue laws of the state of South Dakota are imperfect and inadequate." From a careful examination of the law of 1891, creating the right, and relating to the steps essential to the subjugation of real property to a payment of taxes levied upon personal property, there is nothing to indicate a legislative intention to give such provisions any retroactive force or effect. American Inv. Co. v. County of Beadle (S. D.) 59 N. W. 212. I am convinced that no provision of law exists authorizing appellants to sell the real estate described in the complaint for taxes assessed against the personal property of former owners, and that a case was presented to the trial court which, in equity, authorized and justified the granting of a perpetual injunction. The judgment appealed from ought to be affirmed.