## DANFORTH V. McCOOK COUNTY *et al.*

1. Taxes are not debts, within Laws U. S. 1878, Chapter 190, Section 4, (20 Stat. 114.) exempting timber culture claims from debts contracted prior to issuance of the final certificate.

2. Under Comp. Laws, Section 1612, making personal property taxes a lien on real property owned or thereafter acquired by the person against whom they are assessed, a timber culture claim is, after issuance of the final certificate, subject to levy for prior personal property taxes due from the settler, since by issuance of such receipt it ceases to be public land.

3. Laws 1891, Chap. 14, prescribing the mode of making assessments and the levy and collection of taxes, does not affect past due taxes which had become a lien prior to its passage.

4. Under Laws 1891, Chap. 14, Sec. 123, providing that a sale of lands for personal property taxes shall not be void for failure to collect such taxes by distraint and sale of personal property, a sale of real estate for personal property taxes is not void for failure of the county auditor to file a return showing the tax uncollectible out of personal property, as required by Section 96.

5. Laws 1891, Chapter 14, Sections 82, 83 approved in March 1891, making a tax receipt conclusive as to payment of all taxes prior to its issuance, do not apply to the payment in January, 1891, of a tax for 1890, or to a receipt issued therefor.

6. Said act does not apply to a certificate of redemption from a tax sale.

(Opinion filed Oct. 18, 1898.)

Appeal from circuit court, McCook county. Hon. JOSEPH W. JONES, Judge.

Action by F. C. Danforth against McCook county and another to cancel a certificate of tax sale. From a judgment for plaintiff and an order denying a new trial, defendants appeal. Reversed.

The facts are stated in the opinion.

*M. A. Butterfield*, for appellants.

The land in question having been entered under the timber culture laws and final proof having been made and final certificate issued it was subject to taxation. U. S. Laws Act June 14, 1878, 20 U. S. Stat. at Large 113.

As long as land remains a part of the public domain it is not subject to taxation, but as soon as it becomes private property the right to tax attaches. Railroad v. Trempleson, 35 Wis. 257; Railroad v. Taylor, 52 Wis. 37; Oswall v. Hallowell, 15 Kan. 154; Morrison v. Railroad, 42 Minn. 451. This is true even though no actual transfer has been made by the issue of a patent. Witherspoon v. Duncan, 4 Wall. 210; Railroad v. Prescott, 16 Wall. 603; *In re* Railroad, 44 N. W. 72; Wheeler v. Merriam, 30 Minn. 372; Smith v. Holliss, 46 Ark. 203; Stryker v. Polk, 22 Ia. 131; Vinton v. Cerro Gordo, 72 Ia. 155. A homestead becomes taxable as soon as the owner has right to make final proof and complete his title. Bellinger v. White, 5 Neb. 399; Burcham v. Torry, 55 Ark. 399. This is true even though the proofs are suspended and further proofs demanded, which demand is not complied with. State v. Hunter, 44 N. W. 201; Railroad v. Walker, 47 Fed. 681; Railroad v. Wright, 51 Fed. 68. When the right to a patent becomes vested it is equivalent so far as the Government is concerned to a patent already issued. Barney v. Dolph, 97 U. S. 625; Storks v. Storris, 6 Wall. 402.

Personal property taxes assessed during the years prior to final proof and patent becomes a lien against the land after title fully vests in the entryman against whom the taxes are assessed. Iowa Land Co. v. Douglas, 8 S. D. 491; Wilcox v. Jackson, 13 Pet. 498; Boyce v. Dantz, 29 Mich. 146; Bagnell

v. Broderick, 13 Pet. 436; Barnard v. Ashley, 18 How. 43; U. S. v. Fox, 94 U. S. 315; McCormack v. Sullivan, 10 Wheat. 202; Brine v. Ins. Co. 96 U. S. 627.    Taxes are not debts within the meaning of the timber culture laws of the United States exempting timber culture claims from debts contracted prior to issuance of the final certificate.    25 Am. & Eng. Enc. of Law, pp. 11, 12; People v. Seymour, 16 Cal. 340; Perry v. Washburn, 20 Cal. 318; McInery v. Reed, 23 Ia. 410; *In re* Duryea, 2 Fed. 68; Hibbard v. Clark, 22 Am. Rep. 442; Himmalmen v. Spangle, 39 Cal. 389; Nebraska City v. Gas Co. 9 Neb. 339,

*A. C. Biernatzki,* for respondent.

The sale of the lands in question for the personal property taxes was void because the treasurer did not make and file his return that the personal property tax was uncollectable. Sec. 96, Chap. 14, Laws 1891; Desty Taxation, §§ 125, 136; Thatcher v. Powell, 6 Wheat. 119; Simms v. Greer, 83 Ala. 263; Beldon v. State, 46 Tex. 103; Johnston v. Hahn, 4 Neb. 139; Julian v. Stevens, 11 S. W. 6; Schradt v. Deputy, 88 Ind. 90; Jackson v. Shephard, 7 Cow. 88; Jones v. McLain, 23 Ark. 429; Flogan v. Jones, 10 So. 537; Curtiss v. Reneker, 13 N. E. 664; Adams v. Osgood, 60 N. W. 869.

The receipts held by plaintiff showing payment of the land tax for 1890 and for the personal tax of 1886 are conclusive as to the payment of prior taxes.    § 83, Chap. 14, Laws of 1891; Van Bentheyson v. Sawyer, 36 N. Y. 150; Gould v. Sullivan, 54 N. W. 1013; Land Co. v. Newman, 65 N. W. 494; Desty Taxation, p. 12.

The provisions of the timber culture laws of the United States exempting timber culture claims from the payment of

debts contracted prior to issuance of the final certificate exempts this land from the payment of these prior taxes. Taxes are debts within the meaning of that law. § 4 Act June 14, 1878, Laws U. S.; 23 Am. & Eng. Enc. of law 326; Bainton v. Carver, 2 Story (U. S.) 432; Mill Dam Foundry v. Hovey, 21 Pick. 455; Bank v. Bank, 3 Metc. 582; Stanton v. Wilkeson, 8 Ben. (U. S.) 357; Warner v. Commack 37 Ia. 642. Dellinger v. Tweed, 66 N. C. 206. Gill v. Edwards, 87 N. C. 77; Smith v Ormans, 17 Wis. 395; Mertz v. Berry, 59 N. W. 445; State v. O'Neil, 7 Ore. 141; Flannagan v. Forsythe, 50 Pac. 152; Kansas Lumber Co. v. Jones, 4 Pac. 74; Page v. Peters, 35 N. W. 328; Irvin v. Marshall, 20 How. (U. S.) 564; Gibson v. Choteau, 13 Wall. 92; Fink v. O'Niel, 106 U. S. 283; Giles v. Hallack, 33 Wis. 523; Miller v. Little, 47 Cal. 348.

Corson, P. J.    In 1880 one Kemis entered a timber claim in McCook county, and in 1890 received his final receipt, and in 1893 a patent for the same. After the issuance of a patent Kemis sold and transferred the property to the plaintiff. During the years from 1882 to 1892, inclusive, personal property taxes were assessed against said Kemis, of which only the taxes assessed for the year 1886 were paid. In 1896 the county auditor brought forward these delinquent personal taxes against Kemis, and advertised and sold the real property so entered as a timber claim for the same, together with the real estate taxes on said real property for the year 1895, for the sum of $344.65, and issued to the county a certificate of sale therefor. The plaintiff, claiming that the real property was only liable for the real-property tax for 1895 and the personal taxes assessed against Kemis for the year 1893, amounting to

$49.65, tendered that sum to the county treasurer, who refused to accept the same. Thereupon plaintiff brought this action to compel the treasurer to accept said sum and for a cancellation of said certificate of sale.

The court concluded, as matter of law: "(1) That the personal tax of Thomas Kemis for the years 1882, 1883, 1884, 1885, 1886, 1887, 1888, 1889, 1890, and 1891 are not and never were a lien or liens upon the premises described in the complaint.

"(2) That the sale of the premises mentioned and described in the complaint, and for which the certificate of sale in this action was issued, so far as the said sale was for the satisfaction or collection of personal taxes for the years mentioned in paragraph 1 of these conclusions of law, is null and void."

"(4) That at the time of the treasurer's sale mentioned in the complaint, on November 5, 1896, the said real estate sold was not liable for the satisfaction of any taxes, except the taxes assessed against the same for the year 1895, and the personal tax of Thomas Kemis for the years 1892 and 1893."

Judgment was thereupon entered for the plaintiff that, upon payment of $49.65 and $8.65 for personal taxes assessed against said Kemis for the year 1892, the certificate be canceled. From this judgment and order denying a new trial the defendants appealed.

The learned circuit court evidently took the view that, as the property was a timber claim, the personal property taxes assessed against Kemis prior to the issuance of the patent therefor never became a lien thereon under the provisions of Section 4, Chapter 190, Laws U. S. 1878, which reads as follows: "That no land acquired under the provisions of this act shall in any event become liable to the satisfaction of any

debt or debts contracted prior to the issuing of the final certificate therefor." 20 Stat. 114. The appellants contend that, upon the issuing of the final certificate, the land became the property of Kemis, and that personal property taxes not being debts within the meaning of the statute, the lien for these taxes assessed to said Kemis, immediately attached to the property. The respondent insists that though a "tax" may not in its ordinary acceptation be a "debt" it clearly comes within the meaning of the term "debt or debts," as used in that section, and that the section must be so construed to carry into effect the manifest intention of congress in making the provision. This court held in Iowa Land Co. v. Douglas Co. 8 S. D. 491, 67 N. W. 52, that a "tax" is not a "debt" in the ordinary sense in which that term is used, but is a charge or burden imposed upon the property for the benefit of the public, and we are of the opinion that they are not "debts," within the meaning of this statute. The term "debt" while not having a very clearly-defined meaning in the law, has never, so far as our research extends, been held to include taxes. The author of the subject of "Taxation" in the American and English Encyclopœdia of Law says: "A tax differs from an ordinary debt in that its obligation does not depend upon contract. Generally, in the absence of statute, the collection of a tax is not enforceable by an action of debt; nor; in the absence of statute, does it carry interest; nor is it the subject of set-off against an indebtedness of the taxing district to the taxpayer; nor is its nature as a tax affected by the fact that the statute authorizing its imposition authorizes the institution of an action for its recovery. Taxes are not assignable as debts; nor are they provable in bankruptcy as such, nor are they within the purview

of statutes relating to imprisonment for debt. And the repeal of a statute imposing a tax is not within the meaning of constitutional provisions against the passage of laws impairing the obligation of contracts." 25 Am. & Eng. Enc. of Law, p. 12. In support of these propositions, the learned author cites a large number of authorities, only two of which we deem it necessary to notice. In Meriwether v. Garrett, 102 U. S. 472, the supreme court of the United States says: "Taxes are not debts. It was so held by this court in the case of Lane Co. v. Oregon, reported in 7 Wall. 71. Debts are obligations for the payment of money, founded upon contract, express or implied. Taxes are imposts levied for the support of the government, or for some special purpose authorized by it. The consent of the taxpayer is not necessary to their enforcement. They operate in *invitum.* Nor is their nature affected by the fact that in some states—and we believe in Tennessee—an action of debt may be instituted for their recovery, The form of procedure cannot change their character. City of Augusta v. North, 57 Me. 392; City of Camden v. Allen, 26 N. J. Law, 398; Perry v. Washburn; 20 Cal. 318." In the case of Lane Co. v. Oregon, 7 Wall. 71, referred to in the foregoing opinion, the question of whether or not the term "debt" included a tax was so fully considered and discussed that we quote quite fully from the opinion. In that case the court says: "What, then, is its true sense? The most obvious, and, as it seems to us, the most rational, answer to this question is that congress must have had in contemplation debts orignating in contract or demands carried into judgment, and only debts of this character. This is the commonest and most natural use of the word. Some strain is felt upon the understanding when an attempt is made

to extend it so as to include taxes imposed by legislative authority, and there should be no such strain in the interpretation of a law like this. We are the more ready to adopt this view because the greatest English elementary writers upon law, when treating of debts in their various descriptions, give no hint that taxes come within either (1 Bl. Comm. 475, 476;) while American state courts of the highests authority have refused to treat liabilities for taxes as 'debts,' in the ordinary sense of that word. for which actions of debt may be maintained. The first of these cases was that of Pierce v. City of Boston (1842) 3 Metc. (Mass.) 520, in which the defendant attempted to set off against a demand of the plaintiff certain taxes due to the city. The statute allowed mutual debts to be set off, but the court disallowed the right to set off taxes. This case went, indeed, upon the construction of the statute of Massachusetts. and did not turn on the precise point before us but the language of the court shows that taxes were not regarded as 'debts,' within the common understanding of the word. The second case was that of Shaw v. Peckett, 26 Vt. 486, in which the supreme court of Vermont said: 'The assessment of taxes does not create a debt that can be enforced by suit, or upon which a promise to pay interest can be implied. It is a proceeding in *invitum.*' The next case was that of City Camden v. Allen (1857) 26 N. J. Law, 398. That was an action of debt brought to recover a tax by the municipality to which it was due. The language of the supreme court of New Jersey was still more explicit. 'A tax, in its essential characteristics,' said the court, 'is not a debt, nor in the nature of a debt. A tax is an impost levied by authority of government upon its citizens or subjects for the support of the state.

It is not founded upon contract or agreement. It operates in *invitum.* A debt is a sum of money due by certain and express agreement. It originates in, and is founded upon contracts, express or implied.' These decisions were all made before the acts of 1862 were passed, and they may have had some in-fluence upon the choice of the words used. Be this as it may, we all think that the interpretation which they sanction is well warranted. We cannot attribute to the legislature an intent to include taxes under the term 'debts' without something more than appears in the acts to show that intention. The supreme court of California, in 1862, had the construction of these acts under consideration in the case of Perry v. Washburn, 20 Cal. 350. The decisions which we have cited were referred to by Chief Justice FIELD, now holding a seat on this bench, and the very question we are now considering., 'What did congress intend by the act?' was answered in these words: 'Upon this question we are clear that it only intended by the term "debts" public and private, such obligations for the payment of money as are founded upon contract.' In whatever light, therefore, we consider this question—whether in the light of the conflict between the legislation of congress and the taxing power of the states' which the interpretation insisted on in behalf of the county of Lane would occasion, or in the light of the lan-guage of the acts themselves, or in the light of the decisions to which we have referred—we find ourselves brought to the same conclusion, that the clause making the United States notes a legal tender for debts has no reference to taxes impos-ed by state authority, but relates only to 'debts' in the ordinary sense of the word, arising out of simple contracts, or con-tracts by specialty, which include judgments and recogniz-

ances." As this case was decided in 1868, 10 years prior to the passage of the timber culture law of 1878, we may reasonably conclude that congress used the word "debt" in the act as interpreted by that court.

By § 1612, Comp. Laws, it is proved that "taxes due from any person upon personal property shall be a lien upon any real property owned by such person or to which he may acquire a title." The same provision is contained in section 96, c. 14, Laws 1891, but with a limitation upon its exercise. A large portion of the personal taxes involved in the case at bar accrued prior to the passage of the law of 1891, and must be governed by the section above quoted. The final certificate mentioned in the timber-culture act of 1878, having been issued to Kemis in January, 1890, he thereafter, for the purposes of taxation, became the owner, and the land became subject to the lien for personal taxes assessed prior thereto. Witherspoon v. Duncan, 4 Wall. 210. In that case the supreme court says: "In no just sense can lands be said to be public lands after they have been entered at the land office, and a certificate of entry obtained. If public lands before the entry, after it they are private property. If subject to sale, the government has no power to revoke the entry and withhold the patent. A second sale, if the first was authorized by law, confers no right on the buyer, and is a void act. According to the well-known mode of proceeding at the land offices (established for the mutual convenience of buyer and seller), if the party is entitled by law to enter the land, the receiver gives him a certificate of entry, reciting the facts, by means of which in due time, he receives a patent. The contract of purchase is complete when the certificate of entry is executed and deliver-

ed, and thereafter the land ceases to be a part of the public domain, The government agrees to make proper conveyance as soon as it can, and in the meantime holds the naked legal fee in trust for the purchaser, who has the equitable title. This question was fully considered by this court in Carroll v. Safford, 3 How, 450, and the views we have presented only reaffirm the doctrine of that case. But it is insisted that there is a difference between a cash and a donation entry; that the one may be complete when the money is paid, but the other is not perfected until it is confirmed by the general land office and the patent issued. That congress has the entire control of public lands, can dispose of them for money, or donate them to individuals or classes of persons, cannot be questioned. If the law on the subject is complied with, and the entry conforms to it, it is difficult to see why the right to tax does not attach as well to the donation as to the cash entry. In either case, when the entry is made and certificate given, the particular land is segregated from the mass of public lands, and becomes private property. In the one case, the entry is complete when the money is paid; in the other, when the required proofs are furnished. In neither can the patent be withheld if the original entry was lawful. The power to tax exists as soon as the ownership is changed, and this is effected when the entry is made on the terms and in the modes allowed by law."

As the lien for the personal property taxes assessed prior to 1890 attached in January, 1890, these taxes are not affected by the act of March, 1891.

Respondent further contends that the failure of the treasurer to make and file his return as provided by Section 96 of the act of 1891 rendered the sale invalid. But this view of the

act cannot be sustained. The proviso to said section, read in connection with Section 123 of the act, shows clearly that a failure of the treasurer or any other officer to collect the personal tax or to make such return will not render the sale void. Such failure might be a ground for restraining the sale, but does not affect the sale when made.

The respondent also insists that as Kemis paid his real-estate tax in 1891, and received the treasurer's receipt therefor, this receipt, under the provisions of Sections 82 and 83 of the law of 1891, was made conclusive evidence that all prior taxes had been paid. But as this receipt was given in January, 1891, and the law of 1891 was not approved until March, 1891, it did not apply to this receipt for, or payment of, the 1890 tax.

The respondent further contends that in 1892 the property was sold for the unpaid taxes of 1891 assessed against the real property, but no personal tax of said Kemis was included, and that in March, 1891, the plaintiff redeemed the property from this sale, and this was conclusive that all prior taxes had been paid. But, assuming that the provisions of sections 82 and 83 are constitutional, the provisions can only apply to the payment of taxes in the ordinary way, and cannot be extended to include sales for taxes.

Our conclusions are that, upon the facts as stipulated and found, the court erred in its conclusions of law, and that these conclusions should have been in favor of the defendants. The judgment of the circuit court is reversed, and that court is directed to enter judgment dismissing the action.