[No. 4119.   Decided May 6, 1902.]

CITY OF PORT TOWNSEND, *Appellant,* v. CHARLES EISENBEIS *et ux., Respondents.*

MUNICIPAL CORPORATIONS — ACTION TO FORECLOSE TAX LIENS — CAPACITY TO SUE.

A city of the third class has legal capacity to sue and a right to maintain an action to foreclose the lien of taxes, under the power granted by Bal. Code, § 945, which provides that all taxes shall constitute liens on the property assessed, which may be enforced by actions in any court of competent jurisdiction to foreclose such liens.

SAME — REORGANIZATION — RIGHT OF NEW CORPORATION TO DELIN-
QUENT TAXES DUE OLD CORPORATION.

Where a city was entitled under its special charter to have a
lien upon real property until taxes assessed thereon should be
paid, with power to enforce collection by summary process, it
did not lose such rights by re-incorporating under general laws
which provided (Bal. Code, § 704) that such reorganization
should in no wise affect or impair the city's title to any demands,
liabilities or obligations existing in its favor, and that (Bal. Code,
§ 945) all taxes, including those for previous years, might be en-
forced either by summary sale of the property upon which the
same were liens or by action in court to foreclose such liens;
but, under the latter statute, the city acquired the additional
right of enforcing its lien for taxes by suit, as well as by sum-
mary sale.

SAME — LIMITATIONS AGAINST FORECLOSURE OF TAX LIENS.

The general statute of limitations, enacted in 1854, and pro-
viding that "actions can only be commenced within the periods
herein prescribed, after the cause of action shall have accrued,
except when in special cases a different limitation is prescribed
by statute," is inapplicable to actions by the city of Port Town-
send to foreclose tax liens, when it contains no specific provision
in regard to actions of that character, in view of the fact that the
grant of a special charter to the city of Port Townsend, enacted
by the legislature in 1881, provided that the taxes levied there-
under should have the effect of a judgment, and the judgment
should not be satisfied nor the lien removed until the payment
of the taxes, and in view of the further fact that the law under
which that city subsequently reorganized as a municipal corpora-
tion specifically provided that every tax levied should be a lien,
which should not be satisfied or removed until the taxes were
paid, or the property had absolutely vested in a purchaser by
reason of a sale for such taxes.

Appeal from Superior Court, Jefferson County.—Hon.
GEORGE C. HATCH, Judge. Reversed.

*A. W. Buddress,* for appellant.

*A. R. Coleman,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—The city of Port Townsend seeks by this
action to foreclose alleged statutory liens on the real estate

of the defendants (respondents here), described in the complaint, for taxes for the years 1891, 1892, 1893, and 1894, levied by said city, and which have never been paid. The complaint, in substance, alleges that during all the times mentioned therein the plaintiff was, and still is, a city in Jefferson county, state of Washington; that it was duly incorporated and organized under and by virtue of an act of the legislature of the territory of Washington, approved November 29, 1881, entitled, "An act to incorporate the city of Port Townsend," and the act amendatory thereof, approved November 28, 1883, entitled, "An act to amend an act entitled 'An act to incorporate the city of Port Townsend,' approved on the 29th day of November, 1881;" that on the 18th day of August, 1896, said city duly reincorporated under the general laws of the state of Washington as a city of the third class, and that ever since said 18th day of August, 1896, the plaintiff has been, and still is, a duly incorporated, organized, and existing city of the third class; that the defendants during all the times in the complaint mentioned were, and still are, husband and wife, and the owners in fee simple and in the possession of certain real property, which is particularly described, and that said premises are situated in the said city of Port Townsend; that said premises were assessed for taxation at the time and in the manner provided by law and the ordinances of said city for the respective years mentioned and set forth; that the assessments were duly equalized and levied; that payment of the taxes so assessed and levied was demanded after the same became due and payable, but that no part of said taxes, penalty, or interest has been paid. The complaint prays for judgment for the amount of taxes, penalty, and interest due plaintiff, and that the amount found due be adjudged a valid and

paramount lien on said premises, and that said described premises be sold to satisfy said lien, together with costs. The complaint refers in detail to the various ordinances of the city by virtue of which the several assessments and levies of the taxes therein mentioned were made, and which are not specifically mentioned in the foregoing statement of the contents of the complaint, but we think a fair understanding of the complaint can readily be gathered from said brief statement. The defendants interposed a demurrer to the complaint upon the grounds (1) that the plaintiff had no legal capacity to sue, and no right or power in law to maintain this action; (2) that the complaint did not state facts sufficient to constitute a cause of action against the defendants, or either of them; and (3) that this action had not been commenced within the time limited by law, and that the same was barred by the statute of limitations. The demurrer was sustained, and judgment was entered for the defendants, and the plaintiff appealed.

It does not appear to be claimed in this court, that the demurrer is sustainable upon either the first or second ground stated. At all events, we are perfectly satisfied that the appellant city is legally empowered to maintain this action under and by virtue of an express provision of our statutes. Bal. Code, § 945. And we are also satisfied that the complaint states facts sufficient to constitute a cause of action against the respondents. The remaining question for our determination is whether any provision of the general statute of limitations is applicable to this case. This question is the important one, and was elaborately argued by counsel for both the appellant and the respondents, and many authorities are cited in support of their respective contentions. The laws limiting the time within which actions may be commenced were no part of the com-

mon law, and are essentially the creation of statutes. Formerly 'such laws were unfavorably regarded by the courts, for the reason that they were deemed violative of personal rights, and therefore unjust in principle. At the present time, however, it is generally conceded that statutes of limitations are founded upon sound public policy, and, as they tend to the peace and welfare of society, they are considered as being among the most beneficial of our statutory laws. Although these statutes are remedial in their nature, and are always interpreted so as to carry out the intention of the legislature, "yet," says a learned author, "as they are acts which take away existing rights, they should always be construed with reasonable strictness and in favor of the rights sought to be defeated thereby, so far as is consistent with their letter and spirit." Wood, Limitations (3d ed.), § 4.

Our statute of limitations is couched in general terms, and was evidently intended by the legislature to apply to all civil actions except those cases in which some other limitation is prescribed by law, or where it fairly appears in a particular case that no limitation was intended by the legislature. It is clearly within the province of the legislature to change a general statute of limitations whenever it may see fit to do so, and that may be done by the passage of an act inconsistent with the general statute. Our statute of limitations was first enacted in the year 1854 by the legislature of the territory of Washington, and but few changes have been made in its provisions since that time. Laws 1854, p. 362. The first section of that act, and which is still in force, provides "that actions can only be commenced within the periods herein prescribed, after the cause of action shall have accrued, except when in special cases a different limitation is prescribed by stat-

ute." . . . See Bal. Code, § 4796, and 2 Hill's Code, § 111.

At the time this act was passed and for many years thereafter, the payment of taxes not voluntarily paid was enforced by a seizure and sale of the property assessed, by a designated officer, in the manner provided by law. To such proceedings the general statute of limitations is plainly not applicable. And it was provided in the original charter of the city of Port Townsend (Laws 1881, p. 115) that delinquent city taxes should be collected in the manner above indicated; and no other or different method was provided until the reincorporation of the city on August 18, 1896, under and by virtue of the general statute providing for the organization, classification, etc., of municipal corporations, approved March 27, 1890, and the amendments thereof. The limitations prescribed by our statute apply to actions brought in the name of the state, or any county or other public corporation therein, or for its benefit, in the same manner as to actions by private parties. Bal. Code, § 4807; 2 Hill's Code, § 122. After prescribing the time within which certain actions may be commenced in this state, the statute further provides that, "an action for relief not hereinbefore provided for, shall be commenced within two years after the cause of action shall have accrued." Bal. Code, § 4805; 2 Hill's Code, § 120. The general statute specifically provides that actions for the recovery of real property, or for the recovery of possession thereof, shall be commenced within ten years after the cause of action shall have accrued; that an action upon a judgment or decree of any court of the United States, or of any state or territory within the United States shall be commenced within six years, and that an action upon a contract or liability, express or implied, which is not in

writing, and does not arise out of any written instrument, must be commenced within three years after such cause of action shall have accrued.

It is claimed by the learned counsel for the respondents that this action is barred both by the two-year statute and by the six-year statute of limitations above quoted, and that the demurrer to the complaint was therefore properly sustained. On the other hand, it is earnestly contended on behalf of the appellant (1) that the action is not affected at all by any provision of the statute of limitations; and (2) that, if it is, either the six or the ten-year limitation is alone applicable, and that the action is not barred under either of those provisions. In order to determine whether the general statute of limitations is applicable to the case at bar, it is necessary to examine carefully all other statutes relating to the subject, for in no other manner can the real intention of the legislature be ascertained.

Section 82 of the original charter of the city of Port Townsend provides that,

"Whenever any general or special tax has been levied as provided and authorized in chapter two of this act, the same shall have the effect of a judgment against the person, and every lien created by this act has the force and effect of an execution duly levied against all property of the person assessed; the judgment is not satisfied, nor the lien removed until the taxes are paid, and every tax due upon real property is a lien against the property assessed; and every tax due upon improvements upon real estate assessed to other than the owner of the real estate is a lien upon the land and improvements, and every part thereof shall bear interest at the legal rate from the time the same is delinquent until paid or collected." Laws 1881, p. 132.

Subsequent sections of the charter prescribed the then usual summary method of collecting delinquent taxes, without an action in court; and such method was therefore,

according to the great weight of authority, exclusive (Cooley, Taxation [2d ed.], p. 16, and cases cited), notwithstanding the fact that the charter authorized the city to sue and be sued generally "in all courts of justice." The complaint herein shows that all the taxes which the city is endeavoring to collect by this action became delinquent under the original charter, and were by its terms made liens on the property assessed; and it is not contended that the remedy of enforcing the collection of taxes prescribed by this special charter of the city could have been defeated, or the tax liens extinguished, by invoking the general statute of limitations, and we do not think any such contention, if made, could be sustained. As we have already intimated, the appellant city was reincorporated on August 18, 1896, under a general law of the state, and the question arises, Did it lose its right to these delinquent taxes because of such reincorporation? We think not, for the reason that such right was expressly preserved by the general statute under and by virtue of which it now exists, and which reads as follows:

"Any city or town organized under the provisions of the last preceding section shall, for all purposes, be deemed and taken to be in law the identical corporation theretofore incorporated and existing, and such reorganization shall in no wise affect or impair the title to any property owned or held by such corporation, or in trust therefor, or any debts, demands, liabilities, or obligations existing in favor of or against such corporation, or any proceeding then pending; nor shall the same operate to repeal or affect, in any manner, any ordinance theretofore passed or adopted and remaining unrepealed, or to discharge any person from any liability, civil or criminal, then existing, for any violation of such ordinance; but such ordinances, so far as the same are not in conflict with such general laws, shall be and remain in force until repealed or amended by compe-

tent authority.  .  .  ."  Laws 1890, p. 135, § 5 (Bal. Code, § 704).

It is evident, from this provision of the statute, that the city lost no "demands, liabilities or obligations" existing in its favor by changing its charter; and we think it is equally clear that it was not deprived, by reason of its reorganization, of the existing remedy for enforcing the collection of taxes by distress and sale of property. On the contrary, upon its reincorporation it became entitled to a new and additional remedy for such purpose, namely, an action in a court of competent jurisdiction. That this statement is true is, we think, plainly shown by § 945 of Bal. Code, which provides that:

"All taxes assessed, including taxes for previous years unpaid or unsatisfied, together with any penalty for delinquency and the costs of collection and interest, shall constitute liens on the property assessed from and after the first day of November in each year; which liens may be enforced by a summary sale of such property, and the execution and delivery of all necessary certificates and deeds therefor, under such regulations as may be prescribed by ordinance, or by actions in any court of competent jurisdiction, to foreclose such liens."

This section of the statute also makes it the duty of the city council to provide by ordinance a system for the assessment, levy and collection of all city taxes or assessments not inconsistent with the provisions of the statute, which system shall conform, as nearly as the circumstances of the case may permit, to the provisions of law governing cities of the second class in reference to the assessment, levy and collection of municipal taxes. And, in the general law governing cities of the second class it is provided that,

"Every tax so levied is made a lien, which shall attach, on said day in each year, to and against all real property

assessed for the amount assessed against it; and if said property be assessed to a wrong person or by a wrong name, said lien shall in no wise be affected or invalidated, and it shall not be satisfied or removed until the taxes are paid, or the property has absolutely vested in a purchaser under and by reason of a sale for such taxes." Bal. Code, § 873 (Laws 1890, p. 162, § 57).

An examination of the chapter of the Code relating to limitations of actions will disclose the fact that the case at bar is not within any of the several classes of actions therein *specifically* designated and limited, and it therefore follows that the only provision, if any, that can be said to apply to this case, is the general one that "actions for relief not hereinbefore provided for shall be commenced within two years after the cause of action shall have accrued;" and, after a careful consideration of the statutes relating to the levy and collection of taxes by the appellant city, we feel satisfied that neither the last mentioned nor any other provision of the general statute is controlling in this case. It must be borne in mind that our statute of limitations had been in existence for more than a quarter of a century, presumably to the knowledge of the legislature, when the special charter of the city of Port Townsend was enacted, containing the declaration that every tax due upon real property is a lien against the property assessed, and that the lien is not removed until the taxes are paid. The legislative intention as to the character and duration of tax liens in cities of the third class is even more forcibly expressed in the later general act, which, as we have observed, declares that said lien "shall not be satisfied or removed until the taxes are paid, or the property has absolutely vested in a purchaser under and by reason of a sale for such taxes." These expressions of the legislature, it seems to us, are certainly inconsistent with the

idea that the liens are extinguished or rendered ineffectual by the lapse of any particular number of years after they attach to the property assessed. And it is hardly necessary to cite authorities in support of the proposition that, where a general act is inconsistent with a special act or charter, the latter must prevail, unless it clearly appears that it was the intention of the legislature that the special should be repealed by the general act.

"It is a principle of very extensive operation that affirmative statutes of a general nature do not repeal by implication charters and special acts passed for the benefit of particular municipalities." 1 Dillon, Municipal Corporations, § 87.

In discussing this subject the supreme court of California, in a well-considered case, said:

"Whether a general law repeals a charter or special act in conflict with it depends upon the intention of the legislature; and the courts have always assumed that if the legislature intended by a general statute to divest a municipal corporation of any right, privilege or power conferred upon it by a special act, the latter would be, in some way, unmistakably referred to in such general statute. . . . But in the absence of any reference whatever in the general statute to charters or municipal corporations or special acts relating exclusively thereto, the rule is well settled that provisions of such charters and special acts are not affected by the provisions of a general statute repugnant thereto." *Wood v. Election Commissioners*, 58 Cal. 561, 564.

And in *People v. Quigg*, 59 N. Y. 84, the court of appeals of New York observed:

"Laws special and local in their application are not deemed repealed by general legislation, except upon the clearest manifestation of an intent by the legislature to effect such repeal, and ordinarily an express repeal by some

intelligible reference to the special act is necessary to accomplish that end."

It was also said in that case that "repeal of statutes by implication is not favored and only takes place when two acts are so inconsistent that both cannot stand, and then the later act prevails." Although the doctrine thus announced by the above-mentioned authorities is not here in any wise controverted, it is argued, at least inferentially, on the part of the respondents, that there is in fact no inconsistency between the general statute of limitations and the charter of the city as to the time within which an action may be brought for the collection of general taxes, and that the general statute is therefore controlling in this case. In support of the contention that the action is barred by the limitation statute, the respondents cite and mainly rely on the following cases: *Stale v. Mining Co.,* 14 Nev. 220; *San Francisco v. Jones,* 20 Fed. 188; *San Diego v. Higgins,* 115 Cal. 170 (46 Pac. 923); *State v. Certain Lands,* 42 N. W. 473 (S. C., *Redwood County v. Winona & St. Paul Land Co.,* 40 Minn. 512).

These were all actions to collect delinquent taxes, and in each of them it was held that the proceeding was barred by some particular provision of the statute of limitations. While the statutes of limitations under consideration in those cases contained some provisions substantially like ours, each of them also contained a provision not found in our statute prescribing a time within which an action could be commenced "on a liability created by statute," and which was deemed applicable in actions for the collection of taxes. But if we accord to these authorities cited by respondents all the force and effect to which they are entitled as precedents, still we cannot consider them decisive of the case at bar without completely ignoring the pro-

visions of appellant's charter authorizing the collection of delinquent city taxes by an action in a court of competent jurisdiction, which we are not at liberty to do.

*State v. Mining Co., supra,* was an action to recover certain taxes and penalties for non-payment upon the proceeds of respondent's mines, alleged to be due and delinquent for twenty-one quarter years, the first commencing July 1, 1867, and the last ending December 1, 1878; and the action was commenced in January, 1878. A demurrer was interposed to the complaint on the ground, among others, that the action was barred by the statute of limitations. The demurrer was sustained, and the plaintiff refused to amend, and thereupon judgment was entered for the defendants, and the state appealed. The revenue laws of the state gave two remedies to enforce by action the collection of delinquent taxes,—one against the person, and the other against the property; and a personal judgment was accordingly sought against the mining company, and also a separate judgment against its mine for the same sum, and a decree was asked adjudging the taxes and penalties to be liens upon the mine. The revenue law of the state provided that "every tax levied . . . on the proceeds of mines is hereby made a lien on the mines or mining claims . . . and shall not be satisfied or removed until the taxes . . . are all paid, or the title to said mines or mining claims has absolutely vested in a purchaser under a sale for the taxes." This provision, it will be observed, is quite similar to that of the charter of Port Townsend relating to the *creation* and *duration* of tax liens; but said charter, unlike the Nevada statute, does not provide for a specific judgment in tax cases either against the delinquent tax payer or against the property. The court in that case conceded that the lien created by the

revenue law continued indefinitely, or until the tax should be paid or the property sold under tax sale, but at the same time concluded that the revenue statute neither excepted taxes from the operation of the statute of limitations, nor extended the time for bringing suits for their collection beyond the period prescribed by that statute. And the court held, in effect, that, although the state had a valid and continuing lien on the property in controversy as security for the payment of the taxes, the remedy for enforcing it was barred, and that all that was left to the state was a "right without a remedy."

But here we have both a right and a remedy, for the legislature has explicitly said that the city may foreclose its lien for taxes for *previous years* by an action in court, and that is just what it is seeking to do in this instance. And it would be a forced construction of the language of the legislature to hold that the words "previous years" mean two or three or any other particular number of years, and we do not think we would be justified in so construing it. When a party pleads the statute of limitations as a defense to an action, it is incumbent upon him to show that the action is clearly within its provisions, for, as this court said in *Bowman v. Colfax,* 17 Wash. 347 (49 Pac. 552):

"The statute of limitations is not such a meritorious defense that either the law or the facts should be strained in aid of it."

Concerning the Nevada case above mentioned, it may be said that one of the reasons for the court's decision was that the statute applying the limitation law to actions by the state was passed subsequently to the enactment of the revenue law there under consideration, and was therefore considered the controlling statute. Upon that subject the court remarked:

". . . the law making the statute of limitations applicable in actions brought by the state, the same as in

actions by private parties, was passed two years subsequent to section 3156 of the compiled laws [the revenue law] and is, consequently, the controlling statute, so far as this defense is concerned."

Tested by this well-known rule of statutory construction, the case in hand is not affected by the statute of limitations, for, as we have already said, the provisions of the city charter relating to the lien and collection of taxes were passed many years subsequent to the enactment of that statute, and are, in our judgment, inconsistent with it.

*San Francisco v. Jones, supra,* was a statutory action to recover city, county, and state taxes; and the court held, following the Nevada case of *State v. Mining Co.,* that the action was barred by the general statute of limitations of California. But the statute governing that action simply authorized the recovery of a personal judgment against the party charged, and that was all that was sought in the complaint. It appears from the opinion of the court that the statute upon which the action was founded said nothing about a lien, and authorized no suit to foreclose a lien. And that being true, the case cannot be regarded as very cogent authority in favor of respondents' contention.

In *San Diego v. Higgins,* cited by respondents, the court held (TEMPLE, J., dissenting) that an action to recover a personal judgment for taxes, and to enforce the tax lien on the land, was an action "upon a liability created by statute," and must be brought within three years, as prescribed by the statute of limitations, though § 3716 *et seq.* of the Political Code gave taxes the effect of judgments. In *Lewis v. Rothchild,* 92 Cal. 625 (28 Pac. 805), it was said that § 3716 of the Political Code, which is similar to § 82 of the original charter of Port Townsend, prescribed a different limitation as to liens created by that Code from that pre-

scribed anywhere in the Code of Civil Procedure. In reference to this declaration the same court remarked, in substance, in the Higgins case, that the court was only called upon, in the case of *Lewis v. Rothchild*, to determine whether or not the alleged tax lien was a valid and subsisting lien, and it held that it was valid under §3716 of the Political Code, but that the question of the enforcement of such a lien was not before the court at all. And again, in *State v. Certain Lands, supra*, it was held that proceedings under the tax law to obtain judgment against the land are "an action upon a liability created by statute," and that the six-year limitation prescribed by statute applied to such proceedings; overruling *Brown County v. Winona & St. Paul Land Co.*, 38 Minn. 397 (37 N. W. 949), wherein it was held that the statute of limitations did not apply to such proceedings, because they were not analogous to any of the classes of actions enumerated in that statute. It will be observed that it does not appear in any of the cases above mentioned that the court was called upon to determine the effect of a statute, like ours, specifically authorizing the foreclosure of tax liens. Indeed there is a marked diversity in the opinion of the courts as to the applicability of statutes of limitations in proceedings to enforce tax liens under statutes of no broader import than that of § 82 of the first charter of Port Townsend; and we are inclined to believe that the limitation laws ought not to be held applicable to such cases, unless made applicable by legislative declaration. In North Dakota the statutes of limitations provide that an action on a liability created by statute must be brought within six years, and the statute is made applicable to actions by or on behalf of the state. The revenue law declared that the lien of taxes should be perpetual. And in

*Wells County v. McHenry,* 7 N. D. 246 (74 N. W. 241), which was a proceeding to foreclose a tax lien, it was insisted on behalf of the defendant that the action was barred by the statute of limitation; but the court ruled otherwise, and, in discussing the question of limitation, said:

"As a perpetual lien was given, it is obvious that it was not intended that after any period of time, however long, the taxes themselves should become extinguished or the lien thereof destroyed. So far as any right to enforce such taxes by an action against the owner is concerned, it may be that the six-year limitation would apply. But the law making power clearly manifested a purpose that no lapse of time should destroy the taxes, or the right to enforce the lien thereof against the real estate on which they were levied, when it declared that such lien should be perpetual. A perpetual lien presupposes a continuance of the obligation of the citizen to pay the tax without reference to the lapse of time. . . . And it is impossible that the legislature meant to subject this lien, and the right to enforce it, to any limitation law; for then we would witness the anomalous condition, presented by a perpetual lien, of a perpetual tax, without any power in the public to make such lien available. A lien that cannot be enforced is no lien at all. No person in purchasing the property subject to it would pay any heed to it, for it could never work him any injury."

What is there said is, we think, equally applicable to the case at bar. That, like this, was an action to foreclose a tax lien. The statute of that state creating the lien and making it perpetual is, in legal contemplation, the same as the provision of appellant's charter relating to tax liens. The city charter, it is true, does not expressly say that the liens shall be perpetual; but it uses equivalent lan guage, in declaring that the lien shall not be removed until the taxes are paid. That these two provisions are of

similar import was expressly decided by the supreme court of Nebraska in *Wygant v. Doll*, 26 Neb. 562 (42 N. W. 735).

In *Iowa Land Co. v. Douglas County*, 8 S. D. 491 (67 N. W. 52), which was an action to enjoin the county treasurer from selling land for personal taxes, it was held that the statute of limitations had no application to taxes levied under the authority of the state, and did not run against them. In that state (South Dakota) the payment of taxes is enforced by a summary sale of the property, like that provided in the special charter of Port Townsend, and not by action, and the learned counsel for respondents therefore claims that the case last cited is not in point here. But inasmuch as the original method of collection by distress and sale is not limited as to time, but may be employed at all times until the taxes are paid, it would be unreasonable to assume that the new and concurrent remedy by suit was intended to be less efficacious than the old, which would certainly be the case if the statute of limitations applies to this action. In Ohio taxes charged against real estate were made liens upon it, which continued until the taxes and penalties thereon should be paid. In addition to the summary method of collection theretofore existing, the legislature provided remedies by suit. And in *Westeney v. Schott*, 58 Ohio St. 410 (51 N. E. 34), the supreme court, in considering the effect of the statute of limitations upon the new remedies, said:

"　.　.　.　It is but a natural and reasonable presumption that the additional remedies were designed to be not less comprehensive than those in aid of which they were adopted and, like them, unaffected by the lapse of time. The obligation of the citizen to pay his taxes is regarded as a continuing duty, which is discharged only by their payment."

In an action brought to recover taxes due on real estate for several previous years, and to enforce the lien conferred by statute for the collection of the delinquent taxes, it was held by the supreme court of North Carolina in *Wilmington v. Cronly,* 122 N. C. 383. (30 S. E. 9), that if taxes are not paid within the statutory time the legislature can authorize the collection of such arrearages, notwithstanding such failure to pay. In the case at bar the legislature has expressly authorized the collection of the taxes in question, either summarily or by action; and we discover nothing in the statute granting the right of action that designates any limit of time within which such action may be commenced, or from which it may be legitimately inferred that any limitation was intended. In fact, a contrary intention is fairly manifested by the very terms of the act. It is contended, however, by the respondents, that this action is analogous to an action to collect a street assessment, which actions this court held in several cases were barred by the two-year statute of limitations. In reference to this contention it is sufficient to observe: First, that the rulings of this court in the cases cited, whether right or wrong, were evidently not satisfactory to the legislature, for it soon thereafter passed an act extending the time within which to bring such action to ten years; and second, that there is an obvious distinction between an action to collect an assessment for a local municipal improvement and a suit to recover ordinary taxes. In the one case the action is waged for the benefit of the contractor or material man, and the interest of the public therein is negligible, or, at most, remote. In the other the public is interested, as the taxes, when collected, are used solely for necessary governmental purposes. In other words, an action to recover a tax is an action to enforce a public right.

And it has been held that the statute of limitations does not affect such actions, although it may be applicable to actions to enforce private rights. *Greenwood v. LaSalle,* 137 Ill. 225 (26 N. E. 1089); Black, Tax Titles, § 164. See, also *Sims v. Frankfort,* 79 Ind. 452, and 2 Dillon, Municipal Corporations, § 673.

Our view that the statute of limitations is inapplicable to the present case is further supported by the general trend of legislation in this state concerning taxation. There is nothing that we have been able to discover in any of the various revenue laws enacted by the legislature of this state indicating an intention on the part of the law-making power that a citizen may be completely exonerated from the payment of his just proportion of the general taxes simply by neglecting to pay them at the proper time. The time of payment has been extended, the method of collection changed, and penalties for non-payment have been remitted, but there is no intimation anywhere in the statutes warranting the conclusion that taxes may not be collected by reason of the mere lapse of time. And besides this doctrine has been substantially adopted and applied by this court, for we have several times held that unpaid taxes are *assets* which may be taken into account in determining the indebtedness of public corporations as limited by the constitution.

The judgment is reversed, and the cause remanded, with directions to overrule the demurrer to the complaint.

White, Hadley, and Mount, JJ., concur.