BROOKFIELD *v.* ROCK ISLAND IMPROVEMENT COMPANY.

4-7034                                                      169 S. W. 2d 662

Opinion delivered March 29, 1943.

574

*J. C. Brookfield*, for appellant.

*Walter N. Killough, Thos. S. Buzbee* and *A. S. Buzbee*, for appellee.

CARTER, J. So far as concerns the issues before this court, the facts of this case are as follows:

The Rock Island Improvement Company sued J. C. Brookfield alleging that, under a *bona fide* claim of title, it had paid taxes for many years on lands owned by Brookfield. It asked judgment for such taxes, with interest; for a lien on the land to secure the payment of the judgment, and for a foreclosure of such lien.

Brookfield's answer "expressly pleads the statute of limitations in bar of plaintiff's right of recovery." Brookfield later filed a plea, which he styled "Exceptions to Depositions and Amendment to Answer," and, in such pleading, he excepted to "any tax payments . . . beyond three years, and again pleads the statute of three years limitations provided under § 8928, Pope's Digest."

The chancery court gave judgment for the taxes paid over a period of eighteen years, with interest, declared it a lien on the land and ordered a sale. Brookfield has appealed.

The suit was begun on January 16, 1941, and the taxes paid within three years prior thereto were those for the years 1937, 1938 and 1939.

The court found, and there was sufficient evidence to sustain its finding, that plaintiff had paid the taxes in good faith, claiming to be the owner of the land and without knowledge of any claim to said lands by the defendant. The plaintiff was not officious in making the

payments. Defendant knew of the payments and never did anything about them.

The plaintiff is entitled to recover the taxes it has paid, except such payments as are barred by the statute of limitations, and to a lien on the lands to secure the payment thereof.

The basis of the right to recover is that the defendant has been unjustly enriched at the expense of the plaintiff, and that plaintiff is entitled to restitution therefor. See § 1 of Restatement of the Law of Restitution.

In § 43 of Restatement of the Law of Restitution it is said: "A person who, by payment to a third person, . . . has released another's property from an adverse interest, . . . acting because of an erroneous belief induced by a mistake of fact that he was thereby discharging a duty of his own or releasing property of his own from a lien, is entitled to restitution from such other of the value of the benefit conferred up to the value of what was given, unless the other disclaims the transaction."

In § 54 of Restatement of the Law of Restitution, a similar statement is made as to the law where such a payment is made because of an erroneous belief induced by a mistake of law.

To enforce this right of restitution for the taxes it has paid in good faith, but under a mistake, equity creates for the plaintiff a lien on the lands—a lien similar in many respects to the lien which was released or satisfied by such payments. The language the courts use is that plaintiff is "subrogated" to the tax lien. The original tax lien is, however, gone. The plaintiff is not a transferee or assignee of the original right to exact taxes from the lands nor of the lien to secure that right. Equity creates a new lien for the protection of his right to restitution. In *Belleclair Planting Co.* v. *Hall,* 125 Ark. 203, 188 S. W. 574, Mr. Justice Hart, speaking for the court, points out that "subrogation" is an equitable right and that the lien created by subrogation is a creature of equity and will not be enforced where it will work an

injustice to those having an equal equity. This would not be true if the original right and lien were still in existence and the plaintiff were the holder thereof by transfer or assignment. The subject is discussed in § 162 of the Restatement of the Law of Restitution. Subrogation is a remedial device, similar to the creation of a constructive trust.

The plaintiff's right of recovery is subject to the statute of limitations. Section 8928 of Pope's Digest provides: "The following actions shall be commenced within three years after the cause of action shall accrue, and not after: First. All actions founded upon any contract or liability, expressed or implied, not in writing . . ."

In *Richardson* v. *Bales,* 66 Ark. 452, 51 S. W. 321, it was held that an action for the recovery of money paid under a mistake is barred in three years, where there was no fraudulent concealment, even though the mistake was not discovered until some time after.

In *Person* v. *Cogbill,* 180 Ark. 664, 22 S. W. 2d 161, plaintiff sued to recover taxes paid, over a period of fifteen years, under an alleged agreement with the landowner. This court first found that there was no agreement and that the plaintiff was a stranger and a volunteer, and held that he could not recover any of the taxes so paid. This court then said, page 666: ". . . and in no event could he have recovered, the statute of limitations being pleaded, more than the amount of the taxes for three years, had the evidence supported his contention of an express promise by appellant to repay the taxes." This statement may be regarded as *dicta* in that opinion, but we regard it as a correct statement of the law, and adopt it as such.

In § 104a, illustration 3 (p. 437) of Restatement of the Law of Restitution, in discussing the right to restitution of one who has paid taxes under somewhat similar circumstances, the statement is made that the statute of limitations runs from the time of the payment.

The appellee argues that the statute of limitations is not applicable, that when the taxes were due to the state,

the sovereign, the statute of limitations did not run against it; that when the plaintiff paid the taxes under a mistake it was entitled to be "subrogated" to the state's rights, and, therefore, has the same immunities that the state had. It cites the case of *Childs* v. *Smith, et al.,* 51 Wash. 457, 99 Pac. 304, 21 L. R. A., N. S., 263, 130 Am. St. Rep. 1100. The case does support appellee's contention, but we do not agree that it states the law which is applicable in this state.

Some of the explanations which have been given for the doctrine that the statute of limitations does not run against the sovereign are stated in 37 C. J., p. 711. It is said that the sovereign ought not to be injured by the neglect of its officers; or, that the sovereign's time and attention are occupied by the cares of government and it must not be held to be negligent in its delay. It is also said that the sovereign will not be presumed to advance any unjust or oppressive claim. Even if the plaintiff could be regarded as a transferee or assignee of the sovereign's rights (which it is not), still none of the reasons for the sovereign's immunity from limitations would apply. Plaintiff seeks to enforce rights which it holds purely for its private benefit. The sovereign has no further interest. When these taxes were paid all of the sovereign's interest ceased, just as the sovereign's interest in land ceases when the sovereign conveys the land. Limitation will not operate to deprive the sovereign of title to land, but it will operate against its grantee who holds the land in a purely private capacity.

The contention that limitations will not run against this plaintiff, because it is said to be "subrogated" to the rights of the sovereign, overlooks the true nature of the so-called subrogation. The basis of the right to recover is unjust enrichment. There has been no transfer or assignment of the right to exact taxes. The plaintiff is entitled to restitution. In order to secure this right, equity gives the plaintiff a lien on the land—a lien similar in some respects to the lien which the payments released. We call this process a "subrogation," but in truth and in fact this lien is a new creation, and is created and given by equity as a means of protecting and enforc-

ing the right to restitution. The person for whose protection this equitable right is created does not step into the shoes nor acquire all of the personal characteristics, privileges and immunities of the holder of the original lien. For one example, the sovereign can enforce its lien by a tax sale. The plaintiff here could not do so. The state's rights are free from all equities. Those of the plaintiff may be subject to the equities of others. It is not the state's tax lien which will be enforced, but a new lien created by equity as a remedial device to secure and protect the right of restitution which is personal to the plaintiff.

It follows that the statute of limitations applies and that, the statute having been pleaded, the chancellor erred in giving judgment for taxes paid prior to three years before the bringing of the suit.

When the case was tried below there was a *bona fide* dispute as to the title. During the pendency of the suit the plaintiff paid the taxes for 1940, due in 1941, and is entitled to reimbursement for those taxes as well as for the taxes paid within three years prior to the suit.

As the decree herein affected the title to land, the order of the court will be that the decree be reversed and the cause remanded with directions to modify the decree heretofore entered and to enter judgment in favor of the appellee for the taxes for the years 1937 to 1940, inclusive, with interest from the date they were paid, and for further proceedings not inconsistent with this opinion. Costs in both courts will be taxed against the appellee.

HOLT, J., (dissenting). The simple facts in this case are: Appellee acquired the land involved by purchase in 1903, and each year thereafter, up to and including 1939, has paid the state and county taxes as they became due. Appellant, in 1926, at a previous foreclosure sale for improvement district taxes, acquired deed to the land, but has neither paid, nor offered to pay, any taxes on the property.

It is conceded by all that appellee, in the utmost good faith, without actual knowledge of any claim of title by appellant, not officiously and not voluntarily, has paid the taxes on this land for approximately 37 years. It is my

view that the learned chancellor correctly decreed that appellant was liable to appellee for the taxes paid by appellee in the amount of $593.70 for the years 1923 to 1940, inclusive, since appellant claimed ownership since 1923, and that appellee should have a lien on the land for the taxes so paid.

The majority holds that appellee is barred by the statute of limitation from recovering more than three years taxes paid by it. I cannot follow the reasoning advanced to support this view.

Let it be remembered that appellant is now in a court of equity, a court of conscience. He is, therefore, met on the very threshold with the first and primary rule of equity, and that is that he who seeks equity must do equity. In the instant case, appellee, honestly believing that it was the owner of the land in question, has paid all taxes due from 1923 to 1940 and thereby prevented forfeiture and sale to the state for the taxes due it. Clearly it seems to me that when appellee made these tax payments it was equitably subrogated to the rights and liens held by the county and state for these taxes. The lien of the state for taxes upon real property is never barred by limitations, and I think the owner of such tax lien by subrogation has the same rights that the state had, and steps into its shoes. It has long been the settled rule in this state that a mortgagee or other lien holder who, in order to protect his own interest, pays taxes assessed on the mortgaged property, will be subrogated to the state's lien for reimbursement. *Ringo* v. *Woodruff,* 43 Ark. 469. And in *Stoops* v. *Bank of Brinkley,* 146 Ark. 127, 225 S. W. 593, where an attaching creditor paid taxes on the attached property and the attachment was subsequently dissolved, the court held that the creditor was entitled to be subrogated to the state's lien for taxes paid.

The majority cites no case directly in point to uphold its position. Therefore, we may look to other jurisdictions in an effort to find the equitable, sound and just rule that should be applied in circumstances such as we have here. All must agree that the equities of this case are with the appellee.

Appellee cites a case from the Supreme Court of Washington, that of *Childs* v. *Smith et al.,* 51 Wash. 457, 99 Pac. 304, 21 L. R. A., N. S. 263, 130 Am. St. Rep. 1100, which appears to me to be logically sound, and I think the reasoning and conclusions there announced should control here. In that case Childs attempted to foreclose a mortgage on defendant's property, among other things alleging that he had paid the general taxes for 1893 through 1903, except for two years. The lower court held the mortgage barred. On appeal the lower court was sustained as to the statute of limitation on the mortgage, but on the question of the payment of taxes by Childs the court said: "The appellant further contends that the trial court erred in refusing him an equitable lien for the taxes and assesments which he has paid. This contention should be sustained. Believing he held a valid mortgage lien not barred by the statute of limitations, the appellant in good faith paid the deliquent taxes and assessments for the purpose of protecting such lien. These payments were not voluntarily made. In *Wheeler Company* v. *Pates,* 43 Wash. 247, 86 Pac. 625, the holder of a void tax deed claiming title paid taxes on the land subsequent to the tax foreclosure and sale. His deed was afterwards adjudged to be invalid, but this court recognized his right to an equitable lien for the subsequent taxes so paid by him, saying: 'Respondent's right of recovery is not based upon any statute, but it is upon purely equitable grounds, arising from the fact that the payments made have inured to the benefit of appellants, and have accomplished for them the discharge of a duty with respect to the land which they, as the real owners, were under obligations to discharge themselves.' In *Hemen* v. *Rinehart,* 45 Wash. 1, 87 Pac. 953, the plaintiff commenced an action to quiet his title to certain real estate as against a pretended judgment lien asserted by the defendants. In their answer the defendants pleaded facts upon which they relied to sustain the validity of their judgment lien, and also pleaded their payment of certain delinquent taxes to protect the same. Their judgment has become dormant, and it was held that they were entitled to no lien thereunder; but, in passing upon their claim to a lien for the taxes, this court said: 'The first affirmative defense

does, however, allege the payment of $231.20 of general taxes by the appellants, whch they made for the purpose of protecting their asserted lien. These payments were not voluntary, but were made in good faith. The judgment was an actual lien for the period of five years after its rendition, and the appellants have in good faith, although erroneously, believed and insisted that they have continued to hold a lien until the present time. Under the previous decisions of this court, they are entitled to an equitable lien on the land for the total amount of taxes paid by them, with interest from the several dates of payment.' See, also, *Spokane* v. *Security Savings Society*, 46 Wash. 150, 89 Pac. 466. The payment of the general taxes by the appellant Childs has prevented the respondents' property from being sold for delinquent taxes. It nowhere appears that they at any time paid, or offered to pay, the taxes for which a lien is now claimed by the appellant. Appellant did not make a voluntary payment, nor did he intend to protect the title for the benefit of the respondents. Although mistaken, he honestly believed he held a valid mortgage lien, not barred by the statute of limitations, and made the payments for the sole purpose of protecting such supposed lien. Under these circumstances he is entitled to an equitable lien on the land to secure the taxes so paid by him under a misapprehension, and is also entitled to interest thereon from the respective dates of payment at the rate of 6 per cent. per annum. The respondents are in no position to plead the statute of limitations as against these general taxes, or the appellant's equitable lien therefor. When appellant made the payments he was equitably subrogated to the rights and liens held by the county and State. Respondents did not make the payments, and they could not successfully interpose a plea of the statute of limitations against the State or county, if they still held the tax liens and were seeking to enforce the same. *Port Townsend* v. *Eisenbeis*, 28 Wash. 533, 68 Pac. 1045; *Denman* v. *Steinbach*, 29 Wash. 179, 69 Pac. 751. Section 1740, Ballinger's Ann. Codes and St. Section 8678, Pierce's Code provides that taxes assessed upon real estate shall, after levy, be a lien thereon until paid. Had no payment of these general taxes been made by the appellant, and had there been no

582

tax foreclosure, the lien would still exist in favor of the county and State, and respondents' property would still be subject thereto. It would be inequitable and a manifest injustice to permit the respondents to now secure a release of their property from the lien held by the appellant by a plea of the statute of limitation. To avoid such a miscarriage of justice, the appellant should be equitably subrogated to all the rights and liens of the county and State."

It seems to me that equity, justice and fairness cry out against permitting appellant to benefit by the payment of taxes on his land by appellee, who paid in the utmost good faith, and taxes which appellant was legally bound to pay. In effect, it permits appellant to profit by his own wrong. The statute of limitation should not apply here. I think the decree should be affirmed.