BURNETT *v.* HOLIDAY INNS OF AMERICA.

5-3619                                                  391 S. W. 2d 27

Opinion delivered June 7, 1965.

*Thomas & Finch,* for appellant.

*Ben M. McCray,* for appellee.

PAUL WARD, Associate Justice. On March 5, 1964 John Burnett and his wife, appellants, entered into a written contract with Holiday Inns of America, Inc., appellees. In this contract appellants agreed "to enter into a lease within thirty (30) days from date hereof . . ." covering 3 acres of land (definitely described) upon which appellees were to construct a 48 room motel.

According to the contract the lease was to contain, among other things, the following items:

1. The lease to run 10 years and to be renewable for 9 additional 10 year periods.

"2. Lessee shall pay to lessor the sum equivalent to three per cent (3%) of gross room sales plus one per cent (1%) of all food and beverage sales. Lessee guarantees lessor a minimum monthly rental of $150 per month."

3. Appellees to have right to purchase property at the end of 10 years for $35,000.

4. If appellees should build a filling station on the property they were to pay an additional sum of $50 per month.

5. Provision for tax payments, and appellees' right to connect onto a sewer line.

6. Appellees to have the right to build onto the 48 room motel as needed.

Before the 30 days (mentioned in the contract) had expired the agent of appellees tendered to appellants a written lease (covering in detail each item in the contract) consisting of 8 pages in the transcript. Appellants refused to accept and sign the proffered lease because, they said, it did not conform to the terms of the contract.

On May 4, 1964 appellees filed a complaint in chancery court to force appellants "to specifically perform their contract," and to execute the lease previously presented to appellants. To the above complaint appellants filed an answer, pointing out wherein the lease differed from the contract. After a full hearing the trial court

found that the lease did not conform to the contract, but gave appellees 20 days to offer a conforming lease, pointing out the changes for appellees to make in the lease. Later, the court, after having found the suggested changes had been made, ordered appellants to execute the lease.

In addition to the above items the proffered lease contains section 10 which gave appellees the right, at the termination of the lease (whether at the end of 10 years or 100 years), to remove all assets placed on the land. No such provision is mentioned in the contract. Other changes were made in the lease but we do not deem them material.

Not only is it obvious from the above that the lease did not comply with the terms of the contract, but the trial court so found, and we think properly so. The trial court then attempted to reform the lease to conform to the contract and ordered appellants to accept it. This the court had no authority to do. In the case of *Refrigeration Discount Corporation* v. *Haskew,* 194 Ark. 549, (p. 551), 108 S. W. 2d 908, we clearly announced the rule that ''Courts are not permitted to make contracts for persons *sui juris,* but only construe such as they have made.''

There was a legal obligation on appellees to present to appellants a lease in conformity with the contract, and when appellees failed to do so, appellants, in effect, rejected the contract. In the case of *Smith* v. *School District No. 89,* 187 Ark. 405 (p. 409), 59 S. W. 2d 1022, we said:

''. . . where an offer is made the acceptance must be unequivocal and unconditional; that, where the acceptance is conditional or a new element is contained in it, there is no agreement, but such condition or new matter engrafted is to be deemed and treated as a rejection of the offer.''

In our opinion there were material differences between the contract and the lease prepared by appellees, and consequently, appellants were justified in rejecting the same.

While the contract called for 3% of "gross room sales" the proffered lease contained the following deductions: credits or refunds made to customers, guests or patrons; customary motel rebates and allowances; customary commissions and fees paid to travel agents for business referral; all sums and credits received in settlement of claims for loss or damage to merchandise; telephone, telegraph, laundry, dry-cleaning, valet, house service, food beverage and other charges normally and usually charged to or included in guest room statements or bills; rental value of rooms complimented by the lessee and the rooms occupied by members of the lessee's staff, including the family of the innkeeper.

The contract obligated appellees to pay to appellants 1% "of all food and beverage sales" but the lease excepted therefrom all sales by vending machines; refunds made to guests or patrons; rebates to hotels and restaurants; commissions and fees paid to travel and booking agencies for business referrals; cover charges collected from any customers; food and beverage bills or statements complimented by the lessee; and food and drinks supplied to lessees' staff and family of the innkeeper. The rule above announced was cited with approval in *Tucker Duck & Rubber Co.* v. *Byram,* 206 Ark. 828 (p. 830), 177 S. W. 2d 759.

It was also the obligation of appellees to present an acceptable lease to appellants within 30 days from the date of the contract. This is clearly pointed out in 17 Am. Jur. 2d Contracts § 35 in the following language:

"An offer which specifies a period of time for its duration terminates, of course, upon the lapse of the time therein specified."

The decree of the trial court is reversed and the cause of action is dismissed.

Reversed and dismissed.

HARRIS, C. J., dissents.