Callis L. CHILDS *v.* Jerry ADAMS

94-598                                                    909 S.W.2d 641

Supreme Court of Arkansas
Opinion delivered November 13, 1995
[Petition for rehearing denied December 18, 1995.*)

---

*Special Justice Herman Hamilton joins Brown, J., not participating.

426

*Brazil, Clawson, Adlong, Murphy & Osment*, by: *Charles E. Clawson, Jr.*, for appellant/cross-appellee.

*Graddy & Adkisson, P.A.*, by: *William C. Adkisson*, for appellee/cross-appellant.

DONALD L. CORBIN, Justice. Appellant, Callis L. Childs, appeals the amended decree of the Faulkner County Chancery Court, filed March 16, 1994, granting specific performance of a contract for the sale of appellant's residence to appellee, Jerry Adams. Appellee cross-appeals from that portion of the amended decree denying his request for attorney's fees. Jurisdiction of this case is properly in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(3) and (a)(8).

We review chancery cases *de novo*. *Osborne* v. *Power*, 318 Ark. 858, 890 S.W.2d 570 (1994). However, in reviewing the chancellor's findings, we will not reverse unless they are clearly erroneous or clearly against a preponderance of the evidence, and the burden is upon the appellant to show that the findings are erroneous. *Id.; Riddick* v. *Streett*, 313 Ark. 706, 858 S.W.2d 62 (1993); ARCP Rule 52(a).

*I. Direct appeal*
*A. Authority of the trial judge*

Appellant first argues that the consent decree entered in *Hunt* v. *State of Arkansas*, Number PB-C-89-406 (E.D. Ark. November 7, 1991, as amended September 24, 1992) ("Consent Decree"), ended the elective term of office of Chancellor Lawrence E. Dawson of the 11th West Judicial District effective December 31, 1992, and, therefore, the Chief Justice of this court was without authority to subsequently assign him to hear this case upon the recusal of the trial judges of the 20th Judicial District. Appellant does not challenge the jurisdiction of the chancery court itself over this action. Appellant concedes he raises this

issue for the first time on appeal, but characterizes it as one of subject matter jurisdiction that must be reviewed. We disagree.

■ Appellant's challenge to Chancellor Dawson's authority does not raise an issue of subject matter jurisdiction. *Simpson* v. *State*, 310 Ark. 493, 837 S.W.2d 475 (1992). In *Simpson*, the appellant argued for the first time on appeal that the chancellor and probate judge who tried that criminal case in the circuit court lacked subject matter jurisdiction to do so. This court ruled that the issue presented was not one of subject matter jurisdiction, and, accordingly, refused to consider the issue because it was not preserved for appeal. This court stated:

> Subject matter jurisdiction, however, is determined from the pleadings, and once a proper charge is filed in circuit court, that court may exercise jurisdiction over that subject matter. . . . Moreover, jurisdiction is granted to a particular position, that is, to a particular court, and not to the person who fills it. . . . Here, the [circuit court] clearly had jurisdiction over the two rape charges and the issue raised by Simpson concerns the authority of the individual who filled that position. As was the case in *Nation* [*v. State*, 283 Ark. 250, 674 S.W.2d 939 (1984)], that issue relates to the authority of the sitting judge and not to the jurisdiction of the circuit court.

310 Ark. 493, 499, 837 S.W.2d 475, 478 (citations omitted). *Accord Bradford* v. *Bradford*, 49 Ark. App. 32, 894 S.W.2d 616 (1995) (holding the appellant's objection to the authority of a circuit judge to hear his divorce case in chancery was waived for failure to raise it below).

■■ The present case, arguably, is distinguishable from *Simpson* because appellant asserts that Chancellor Dawson was "not a judge at all" as a result of the Consent Decree. Yet, appellant has failed to abstract the facts necessary for us to assess the effect of the Consent Decree upon Chancellor Dawson's judgeship, which determination is prerequisite to any consideration of appellant's argument on its merits. Further, the portion of the record pertinent to this issue does not reveal the assignment of Chancellor Dawson was invalid. In our recent decision, *Neal* v. *Wilson*, 321 Ark. 70, 75, 900 S.W.2d 177, 179 (1995) (per curiam), we held that, where the record reflected the challenged assign-

ment of the trial judge was valid, the assignment gave him jurisdiction to try the case, and stated:

> *It is the parties' or trial court's responsibility to apprise this court as to whether an assignment is necessary under Act 496. Once that assignment is made, that responsibility continues. Clearly, it is not this court's task, on its own volition, to discover or monitor whether the circumstances have changed to warrant the termination of an assignment or reassignment.*

On this record, appellant's first assignment of error fails.

### B. Attorney disqualification

Appellant next argues that the trial court erred in refusing to disqualify appellee's attorneys, William C. Adkisson and Larry E. Graddy. Appellant filed a pretrial motion to disqualify, alleging that Adkisson was a business partner of Graddy, that Graddy had counseled with appellant regarding the contract for the sale of appellant's residence, and that the resulting conflict of interest disqualified Adkisson. At the hearing on the motion to disqualify, appellant argued that Graddy's conflict of interest also disqualified Graddy. We affirm the trial judge's denial of the motion to disqualify.

The evidence introduced at the hearing revealed that, in May 1993, appellant presented appellee with a written offer to swap appellant's residence for real property owned by appellee, plus cash. The swap offer was drafted by appellant, who is a practicing attorney, but was never accepted by appellee. Graddy's purported conflict of interest arises from certain conversations between him and appellant regarding the proposed swap transaction. In June 1993, the sale contract that is the subject of this appeal was executed by the parties. The sale contract was drafted by Graddy as legal counsel for appellee.

As regards the proposed swap transaction, appellant testified that he drafted the swap offer after speaking with Graddy about the swap transaction at least twice, once by telephone and once at the county courthouse. Appellant testified that he had asked Graddy for drafting suggestions regarding the swap offer. Appellant testified that he did not send Graddy a copy of the swap offer, could not remember if he notified Graddy that the swap

offer had been sent to appellee, and was charged no fee by Graddy. Appellant testified that he had questioned Graddy's competence to handle a swap transaction, and that it was his understanding and intent that Graddy would handle the transaction for him. Graddy testified that appellant called him at least once about a contemplated swap of his residence, and that his recollection of that conversation was "that [appellant] was simply trying to be sure that a swap could take place and that the title could be cleared and that good — an insurance policy, without exceptions, could be given to both parties." Graddy testified that he never considered appellant's conversations with him to be a request for legal services. Graddy testified that, although he could not recall if appellant had initially disclosed that appellee was the other party to the proposed swap transaction, that disclosure was made in May 1993.

As regards the sale contract, appellant testified that he had not consulted with Graddy in any way, and that appellee had disclosed to him that Graddy would be preparing the sale contract. Graddy testified that he considered his representation to have been for appellee exclusively, and that he had disclosed to appellee his contact with appellant about the proposed swap transaction.

Graddy testified that he periodically responded to requests from appellant for advice about various legal matters relating to appellant's clients. Graddy testified that he never billed appellant or was paid by him for these legal advices. Graddy characterized his relationship with appellant as friendship and testified that he had never represented appellant in any matter.

■ At the conclusion of the hearing, the trial court announced from the bench that the conversations between appellant and Graddy "have just been friendly conversations . . . rather than any kind of a [sic] attorney-client relationship." The trial court's finding that no attorney-client relationship existed between Graddy and appellant is not clearly erroneous or against the preponderance of the evidence. Hence, appellant has failed to show Graddy had a conflict of interest that required his disqualification. Accordingly, we do not address appellant's contention that the trial court erred in denying his motion to disqualify Adkisson on the theory that Graddy's purported conflict of interest should have been imputed to Adkisson.

## C. Contract formation

Appellant next argues that the trial court erred in ruling that the sale contract was a valid and binding offer and acceptance. The express terms of the sale contract required appellant, as the offeree, to sign and physically deliver the sale contract to appellee, as the offeror, prior to 12:00 noon on June 15, 1993. At trial, the parties offered conflicting testimony regarding the time of day that the signed sale contract was delivered to appellee on June 15, 1993. The trial court made no finding of fact on this issue and held it was unnecessary "to resolve the disparity in this testimony due to its finding that the parties by their actions waived contractual provision, resulting in an enforceable agreement of sale."

■■ An offer which specifies a period of time for its duration, such as appellee's offer, terminates upon the lapse of the specified time. *Farmers Ins. Co.* v. *Hall*, 263 Ark. 734, 567 S.W.2d 296 (1978); *Burnett* v. *Holiday Inns of America*, 239 Ark. 642, 391 S.W.2d 27 (1965). A terminated offer cannot later be accepted. *McClure Ins. Agency* v. *Hudson*, 238 Ark. 5, 377 S.W.2d 814 (1964) (offer terminated by offeree's express rejection). Substantial authority exists for the proposition that a late acceptance, in reality, constitutes a counteroffer that must in turn be accepted to form a contract.[1] *E.g., Houston Dairy, Inc.* v. *John Hancock Mut. Life Ins. Co.*, 643 F.2d 1185 (5th Cir. 1981); 2 Richard A. Lord, *Williston on Contracts* §§ 6.55 n. 2 & 6.56 (4th ed. 1991); I. E. Allan Farnsworth, *Farnsworth on Contracts* § 3.19, at pp. 256-57, & n. 16 (1990); *Restatement (Second) of Contracts* §§ 41 & 70 (1981). At trial, appellant testified that he knew the deadline for accepting the offer was past when he signed the contract. On these facts, there seems to be no reason to give appellant's late acceptance any effect other than that of a counteroffer. 1 Joseph M. Perillo, *Corbin on Contracts* § 3.20 (rev. ed. 1993).

■ Appellant argues that, even assuming his late acceptance constituted a counteroffer, no contract was formed because

---

[1]This analysis mirrors the well-established principle of contract law that an acceptance varying the terms of the offer is a rejection of the offer and is a counteroffer that must be accepted to constitute a contract. *Younts* v. *City of North Little Rock*, 294 Ark. 501, 744 S.W.2d 715 (1988); *Byford* v. *Gates Bros. Lumber Co.*, 216 Ark. 400, 225 S.W.2d 929 (1950).

appellee did not validly accept the counteroffer. We disagree. A party's manifestation of assent to a contract is judged objectively, *Crain Indus., Inc.* v. *Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991), and may be proved by circumstantial evidence. *Steed* v. *Busby*, 268 Ark. 1, 593 S.W.2d 34 (1980). A party's manifestation of assent to a contract may be made wholly by spoken words or by conduct. *ERC Mortgage Group, Inc.* v. *Luper*, 32 Ark. App. 19, 795 S.W.2d 362 (1990) (citing *Restatement (Second) of Contracts* § 19 (1981)).

At trial, both parties testified that, on June 15, 1993, appellee went to appellant's office to pick up the fully executed contract. Appellee testified that, thereafter, but prior to his receipt on August 9, 1993 of a letter from appellant purporting to revoke his acceptance of the original offer, appellee brought his contractor into the residence several times to discuss proposed renovations, received a key to the residence from appellant for access during his absence one weekend, purchased several thousand dollars' worth of additional household furnishings, and sold stock for the purpose of funding the purchase price due upon the scheduled closing date, August 30, 1993. The facts of appellee's weekend visit to the residence during appellant's absence and the visits to the residence with his contractor were corroborated by the testimonies of appellant's neighbor, Marilyn Larson, and appellee's contractor, Kenneth Hineline, respectively. Appellant testified that he gave appellee the impression that the sale would be consummated.

Appellee's conduct manifested his unequivocal acceptance of appellant's counteroffer, thereby forming a valid contract, even assuming no timely acceptance of the original offer was accomplished. Without approving the trial court's reasoning, we conclude that its ruling that a valid contract was formed is not clearly erroneous or against the preponderance of the evidence.

### D. Balancing of the equities

Appellant next argues the trial court erred in granting specific performance because the equities favored appellant inasmuch as enforcement of the sale contract would cause him to lose his elected office as Justice of the Peace due to his failure to find other adequate housing within his district, and because he would be deprived of his home of many years. The argument

is meritless. The first inequity claimed, the loss of appellant's elected office, is a moot issue because, as appellant acknowledges in his reply brief, he was not returned to his elected office in the November 1994 election. The second inequity claimed, the loss of appellant's residence, is completely unpersuasive inasmuch as the sale contract was freely entered into by appellant.

### E. Historic preservation

Appellant next argues that the trial court erred in granting specific performance because appellee's planned renovations would destroy the architectural integrity of appellant's residence, thereby violating this state's public policy to engage in historic preservation. This argument is meritless. First, as appellant's counsel acknowledged in oral argument, appellant's residence is not listed with either the federal or state registers of historic places. Second, even if the residence were listed, this state's public policy with respect to historic preservation does not support appellant's argument. We refer to Arkansas Code Annotated § 13-7-109 (Supp. 1993), which creates the State Register of Historic Places, and clearly provides: "Listing a privately owned property in the State Register of Historic Places shall in no way violate or abridge the lawful owner's right to use, modify, or dispose of said property." Section 13-7-109(d).

### F. Restitution

Appellant's final argument is that the trial court erred in denying him restitution for his expenditures for improvements to the sidewalk and porch in the amount of $8,645.00 in October 1993, and for several repairs totaling $1,036.17 during the period from August 9, 1993 to December 15, 1993. Ruling from the bench, the trial court disallowed "damages," and, in response to appellant's counsel's request for clarification regarding the $8,645.00 expenditure, stated that, although the improvement may have enhanced the property's value, reimbursement would not be ordered because it was "something that could have waited" that was undertaken by appellant at his own risk during the pendency of the present action. The order appealed summarily denies damages for either party. We affirm that ruling.

Appellant was not entitled to restitution for his expenditures. The restitutionary goal, we have stated, "'is to prevent

unjust enrichment of the defendant by making him give up what he wrongfully obtained from the plaintiff.'" *Smith* v. *Walt Bennett Ford, Inc.*, 314 Ark. 591, 602, 864 S.W.2d 817, 823 (1993) (quoting Dan B. Dobbs, *Law of Remedies*, § 1.1 (2d ed. 1993)). *Accord Brookfield* v. *Rock Island Improvement Co.*, 205 Ark. 573, 169 S.W.2d 662 (1943) (citing *Restatement of Restitution* § 1 (1937)). The circumstances of this case are such that, although appellee is benefitted by appellant's expenditures, it is not unjust for him to retain them.

First, appellant, as the breaching party, seeks reimbursement for expenditures which, by his own testimony, were made without appellee's consent. Second, the nature of these expenditures do not support appellant's claim to restitution. With respect to the property improvement, appellant runs afoul of the principle that one who officiously confers a benefit upon another is not entitled to restitution therefor. *Restatement of Restitution* § 2 (1937); *see Brookfield*, 205 Ark. 573, 169 S.W.2d 662 (payment of taxes in good faith by one claiming to be the owner of land and without knowledge of any claim to the land was not officious in making the payment and was entitled to restitution therefor). Similarly, appellant was not contractually obligated to provide the property repairs incurred before the scheduled closing date inasmuch as the sale contract only required conveyance of the residence in "as is" condition. As to the repairs incurred after the scheduled closing date, we observe that appellant's expenditures would have been avoided but for his wrongful refusal to perform the sale contract.

Appellant also argues that his request for reimbursement should have been granted under the common-law principle that money payments or "equitable compensation" to the contracting parties may be decreed in a case granting specific performance of a contract for the conveyance of real property. *Miller* v. *Estate of Dawson*, 14 Ark. App. 167, 686 S.W.2d 443 (1985). Equitable compensation payments are intended to equalize losses between the parties occasioned by the delay in performance of the contract. *Loveless* v. *Diehl*, 236 Ark. 129, 364 S.W.2d 317 (1963). This court has stated:

> The two charges are equitably offsetting and should go together. The sellers are charged with the rental value

> because they have had the use of the buyers' land, and the buyers are charged with interest because they have had the use of the sellers' money. . . . To make either charge without the other is evidently unwarranted, for it gives the favored party the use of both the land and the money.

*Id.* at 134, 364 S.W.2d at 322. Even assuming the principle of equitable compensation is applicable to the expenditures for which appellant seeks reimbursement, *Loveless* indicates it would have been error for the trial court to have granted appellant's request for reimbursement under this equitable principle, absent a determination and award of appropriate offsetting charges for appellee.

## II. Cross-appeal — Attorney's fees

On cross-appeal, appellee assigns as error the trial court's denial of his request for attorney's fees under Arkansas Code Annotated § 16-22-308 (Supp. 1995), which, in pertinent part, authorizes attorney's fees in civil actions "for . . . breach of contract." Relying upon the doctrine of election of remedies, the trial court ruled that this action "is not a suit to recover for breach of contract, but is a suit asking the Court to perform it," and, therefore, section 16-22-308 was not applicable. We disagree.

█ The election doctrine operates to preclude the complainant who simultaneously seeks affirming and disaffirming remedies from receiving an award that "over-compensates and over-restores" him for his injury by permitting recovery on both theories. *Smith*, 314 Ark. 591, 864 S.W.2d 817; *Thomas Auto Co., Inc. v. Craft*, 297 Ark. 492, 763 S.W.2d 651 (1989). Appellee did not offend the election doctrine because he sought only the affirmance remedy of specific performance for his injury. Further, appellee's fee request was collateral or supplemental to the underlying litigation on the contract. *Marsh & McLennan of Arkansas v. Herget*, 321 Ark. 180, 900 S.W.2d 195 (1995). As such, the fee request was not an ingredient of and did not require consideration with the underlying litigation. *Id.* Thus, the policy concern supporting the election doctrine — to avoid duplicative remedies — was not a valid consideration with respect to the fee request. We conclude the trial court's interpretation of section 16-22-308 was erroneous as a matter of law.

The instant action is covered by section 16-22-308. Our rul-

ing is controlled by *Sunbelt Exploration Co.* v. *Stephens Prod. Co.*, 320 Ark. 298, 896 S.W.2d 867 (1995), in which we affirmed an award of attorney's fees under section 16-22-308 in an equitable action by lessors seeking cancellation of lease agreements due to lessees' alleged abandonment and breach of implied lease covenants. *See also Griffin* v. *First National Bank*, 318 Ark. 848, 888 S.W.2d 306 (1994) (stating, in dicta, that the trial court correctly found an action to enforce a guaranty agreement was covered by section 16-22-308). That portion of the appealed order denying attorney's fees to appellee is reversed and the case is remanded to the trial court for reconsideration of that request consistent with this opinion.

The trial court's judgment is affirmed on direct appeal and reversed and remanded on cross-appeal.

Special Justice HERMAN L. HAMILTON, JR. joins in this opinion.

BROWN, J., not participating.